UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| FEDERICO FLORES, JR., | § | |
| MARIA GUERRERO, and | § | |
| VICENTE GUERRERO, | § | |
|    *Plaintiffs*, | § | |
| | § | |
| v. | § | |
| | § | |
| TEXAS SECRETARY OF STATE, and | § | Case No. 7:18-cv-113 |
| ARMANDINA MARTINEZ, ALMA | § | |
| GARCIA, ALICIA DOUGHERTY NO. 1, | § | |
| ALICIA DOUGHERTY NO. 2, | § | |
| YOLANDA MARTINEZ, | § | |
|    *Defendants*. | § | |

## DEFENDANT TEXAS SECRETARY OF STATE'S
## FIRST AMENDED MOTION FOR SUMMARY JUDGMENT

**KEN PAXTON**
Attorney General of Texas

**JEFFERY C. MATEER**
First Assistant Attorney General

**DARREN L. MCCARTY**
Deputy Attorney General for Civil Litigation

**THOMAS A. ALBRIGHT**
Chief, General Litigation Division

**MICHAEL R. ABRAMS**
Southern District ID No. 2513900
Texas Bar No. 24087072
Attorney-in-Charge
General Litigation Division
P.O. Box 12548
Capitol Station
Austin, TX 78711-2548
Phone: (512) 463-2120
Fax: (512) 320-0667
*michael.abrams@oag.texas.gov*

**Counsel for Defendant,
Texas Secretary of State**

## TABLE OF CONTENTS

Table of Authorities ..................................................................................................ii

Statement of the Issues ........................................................................................ 3

   I.  Texas Law Allows Mail-in Voting in Limited Circumstances................................ 3

       A.    A voter must qualify to vote early by mail. ................................................ 3

           a.) Early voting clerks conduct early voting, not the Secretary of
           State. .......................................................................................... 4

           b.) County officials appoint elections judges, who in turn
           appoint the Early Voting Ballot Board to receive and count
           mail-in ballots.......................................................................... 5

   II.  Procedural History. ................................................................................... 6

Argument and Authorities ................................................................................... 7

   I.  Standard of Review. ...................................................................................... 7

   II.  The Secretary of State Is Not a Proper Party. ............................................. 8

       A.    The Secretary of State does not supervise EVBBs. .................................. 8

   III.Plaintiffs Lack Standing Because Their Injuries Would Not Be
     Redressed by an Injunction. ....................................................................... 11

   IV. Texas Election Laws Are Constitutionally Sound. .................................... 12

       A.    State election laws are reviewed under the *Anderson/Burdick*
          balancing test. ....................................................................................... 12

       B.    The burden on voting rights is minimal. .................................................... 14

       C.    Plaintiffs disregarded the process available to them................................. 16

       D.    The State's important interests justify the challenged law. ....................... 17

   V.  Plaintiffs' Equal Protection Claim Also Fails Under *Anderson/Burdick*............ 18

Conclusion ............................................................................................................ 19

## TABLE OF AUTHORITIES

**Cases**

*Anderson v. Celebrezze*,
   460 U.S. 780 (1983) ................................................................................15, 16

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986)........................................................................ 8, 14, 15, 21

*Baranowski v. Hart*,
   486 F.3d 112 (5th Cir. 2007) .............................................................................9

*Boudreaux v. Swift Transp. Co.*,
   402 F.3d 536 (5th Cir. 2005) .............................................................................9

*Burdick v. Takushi*,
   504 U.S. 428 (1992) ...............................................................................passim

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ...........................................................................................8

*Clapper v. Amnesty Int'l USA*,
   568 U.S. 398 (2013) ........................................................................................13

*Crawford v. Marion Cty. Election Bd.*,
   553 U.S. 181 (2008) .................................................................16, 17, 18, 20

*Deutsch v. Annis Enters., Inc.*,
   882 F.3d 169 (5th Cir. 2018)...........................................................................13

*Dubuc v. Twp. of Green Oak*,
   406 F. App'x 983 (6th Cir. 2011) ...................................................................19

*Eu v. San Francisco Cty. Democratic Central Comm.*,
   489 U.S. 214 (1989) ........................................................................................20

*Friends of the Earth, Inc. v. Laidlaw Envt'l. Servs. (TOC), Inc.*,
   528 U.S. 167 (2000) ...........................................................................................9

*Galvan v. Vera*, No. 04-18-00309-CV,
   2018 WL 4096383 (Tex. App.—San Antonio Aug. 29, 2018) ........................7

*Griffin v. Roupas*,
   385 F.3d 1128 (7th Cir. 2004).........................................................................21

*Herrell v. Benson*,
   261 F. Supp. 3d 772, (E.D. Ky. 2017) ...........................................................19

*Inclusive Communities Project, Inc. v. Abbott*,
   2018 WL 2415034 (N.D. Tex. May 29, 2018)................................................12

*John Does #1-7 v. Abbott*,
   345 F. Supp. 3d 763 (N.D. Tex. 2018) ..........................................................12

*Long v. Van de Kamp*,
   961 F.2d 151 (9th Cir. 1992) ..........................................................................11

*Los Angeles v. Lyons*,
  461 U.S. 95 (1983) ................................................................................ 13

*McDonald v. Bd. of Election Comm'rs of Chicago*,
  394 U.S. 802 (1969) .............................................................................. 15

*Nat'l Ass'n of Gov't Emps. v. City Pub. Serv. Bd. of San Antonio, Tex.*,
  40 F.3d 698 (5th Cir. 1994) ................................................................... 8

*O'Shea v. Littleton*,
  414 U.S. 488 (1974) .............................................................................. 13

*OCA-Greater Houston v. Tex.*,
  867 F.3d 604 (5th Cir. 2017) ................................................................ 12

*Ohio Democratic Party v. Husted*,
  834 F.3d 620 (6th Cir. 2016) ................................................................ 16

*Purcell v. Gonzalez*,
  549 U.S. 1 (2006) .................................................................................. 20

*Reynolds v. Sims*,
  377 U.S. 533 (1964) .............................................................................. 14

*Santana v. City of Tulsa*,
  359 F.3d 1241 (10th Cir. 2004) ............................................................ 19

*Storer v. Brown*,
  415 U.S. 724 (1974) .............................................................................. 15

*Stringer v. Pablos*,
  320 F. Supp. 3d 862 (W.D. Tex. 2018) ................................................ 21

*Susan B. Anthony List v. Driehaus*,
  573 U.S. 149 (2014) .............................................................................. 13

*Triple Tee Golf, Inc. v. Nike*, Inc.,
  485 F.3d 253 (5th Cir. 2007) ................................................................. 8

*Veasey v. Abbott*,
  830 F.3d 216 (5th Cir. 2016) .......................................................... 15, 20

**Statutes**

Tex. Elec. Code § 31.001 ............................................................................ 11

Tex. Elec. Code § 31.091(1) ....................................................................... 19

Tex. Elec. Code §§ 32.001 - .002 ................................................................. 6

Tex. Elec. Code ch. 63 ............................................................................... 22

Tex. Elec. Code ch. 82 ........................................................................... 4, 21

Tex. Elec. Code §§ 82.001 - .004 ................................................................. 4

Tex. Elec. Code § 83.001 ............................................................................. 4

Tex. Elec. Code § 86.001(a) ......................................................................... 5

Tex. Elec. Code § 86.002 ................................................................................................ 4

Tex. Elec. Code § 86.002(a) ........................................................................................... 5

Tex. Elec. Code § 86.006(a) ........................................................................................... 5

Tex. Elec. Code § 86.007(a) ........................................................................................... 5

Tex. Elec. Code § 86.009 ................................................................................................ 5

Tex. Elec. Code § 86.011 ................................................................................................ 5

Tex. Elec. Code § 87.002 ................................................................................................ 6

Tex. Elec. Code §§ 87.021 - .041 .................................................................................. 6

Tex. Elec. Code § 87.041 ............................................................................................. 1, 3

Tex. Elec. Code § 87.041(b)(2) ..................................................................................... 17

Tex. Elec. Code § 87.041(e) ........................................................................................... 17

Tex. Elec. Code § 87.0431 ........................................................................................ 6, 17

Tex. Elec. Code § 87.061 ................................................................................................ 6

Tex. Elec. Code § 87.127(a) ....................................................................................... 6, 19

Tex. Elec. Code § 87.401 ................................................................................................ 7

**Rules**

Fed. R. Civ. P. 25(d) ...................................................................................................... 3

Fed. R. Civ. P. 56(a) ...................................................................................................... 7

iv

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| FEDERICO FLORES, JR.,<br>MARIA GUERRERO, and<br>VICENTE GUERRERO,<br>    *Plaintiffs*,<br><br>v.<br><br>TEXAS SECRETARY OF STATE, and<br>ARMANDINA MARTINEZ, ALMA<br>GARCIA, ALICIA DOUGHERTY NO. 1,<br>ALICIA DOUGHERTY NO. 2,<br>YOLANDA MARTINEZ,<br>    *Defendants*. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Case No. 7:18-cv-113 |

## DEFENDANT TEXAS SECRETARY OF STATE'S
## FIRST AMENDED MOTION FOR SUMMARY JUDGMENT

Plaintiffs Federico Flores, Jr., Maria Guerrero, and Vicente Guerrero advance broad facial and as-applied attacks on the constitutionality of Texas Election Code Section 87.041, which directs county-level Early Voting Ballot Boards ("EVBBs") to accept mail-in ballots if they meet the State's statutory requirements.

The claims should be dismissed. Federal courts have long recognized that the "government must play an active role in structuring elections" and thus, a "flexible standard [of review] applies" when analyzing state election laws that may burden the right to vote. *Burdick v. Takushi*, 504 U.S. 428, 433 (1992). As a result, courts have repeatedly upheld restrictions that are generally applicable and protect the integrity of the election process. For the reasons that follow, this court should follow suit.

*First*, despite Plaintiffs' contentions, the Texas Secretary of State does not enforce or administer the challenged statutory provision. Rather, the responsibility for determining the legality of mail-in ballots rests uniquely and finally with the county-level

1

EVBBs. Because the Secretary of State does not enforce or administer Section 87.041, Plaintiffs' injuries are not fairly traceable to the Secretary of State.

*Second*, Plaintiffs lack standing because they have expressly disclaimed any intent to vote by mail in future elections. A favorable ruling from the Court will not redress their alleged injuries. The fact that they allege a harm arising from a prior election is insufficient; they must demonstrate that they would be harmed in a similar manner in the future, such that they would benefit from a prospective injunction issued by the Court. They have not made that showing on this record—in fact, the record *compels* a finding to the contrary.

*Third*, under the flexible review standard that governs these kinds of claims, a requirement that a voter properly complete and submit a mail-in ballot that meets a state's statutory requirements is not a severe restriction on an individual's due process rights. Indeed, the burden placed on voters to ensure that they properly and accurately complete the requirements set for mail-in ballots are similar to those placed on in-person voters, who must travel to a designated polling place on Election Day, often necessitating taking time off of work, arranging for childcare, and waiting in line.

The interests advanced by Texas are sufficient to defeat Plaintiffs' challenge: namely, preserving the integrity of the election process. The challenged law establishes requirements for submitting mail-in ballots in a good-faith and well-reasoned effort to ensure that the person who submitted the mail-in ballot is the person entitled to cast that ballot, as required by state election law. Texas is well within constitutional bounds in exercising that authority.

And Plaintiffs' due process claims fail for another reason, too: Texas law provides them a remedy—the potential for a civil injunctive suit brought by a county election

officer—but Plaintiffs wholly failed to explore whether that might address their concerns. They concede that they did not contact anyone in Starr County, or indeed, anyone, anywhere, after receiving notice that their ballots were rejected. Their due process claims are foreclosed because they did not take advantage of the process that Texas law affords them.

Because Plaintiffs (1) cannot demonstrate that their claims are traceable to Secretary of State; (2) cannot show how an injunction would redress their alleged injuries; and (3) cannot meet their burden of proving that the statute at issue in this case is constitutionally infirm, this Court should dismiss Plaintiffs' claims against the Texas Secretary of State.[1]

## STATEMENT OF THE ISSUES

The issues as identified above include (1) whether Plaintiffs have demonstrated that the Secretary of State is a proper party; (2) whether Plaintiffs have standing to seek a prospective injunction; and (3) whether Texas Election Code § 87.041 is constitutionally sound.

## STATEMENT OF THE CASE

## I.   Texas Law Allows Mail-in Voting in Limited Circumstances.

### A.  A voter must qualify to vote early by mail.

The State of Texas provides for early voting by mail, provided the person seeking to vote by mail meets the qualifications. Tex. Elec. Code ch. 82. Qualifications to vote early by mail include—

---

[1] Plaintiffs initially sued Rolando Pablos in his official capacity as the Texas Secretary of State. *See* Dkt. No. 1. David Whitley, his successor, was automatically substituted as the named defendant under Federal Rule of Civil Procedure 25(d). At this time, the position of Texas Secretary of State is vacant. As soon as David Whitley's successor is appointed, the Texas Secretary of State will alert the Court so that the current Secretary of State can be substituted as a named party pursuant to Rule 25(d).

➢ Declaring an anticipated absence from the county of residence on election day;

➢ Declaring a disability "that prevents the voter from appearing at the polling place on election day without a likelihood of needing personal assistance or of injuring the voter's health";

➢ Demonstrating that the person seeking to vote by mail is over the age of 65; or,

➢ Showing that the person seeking to vote by mail anticipates being jailed during the voting period.

Tex. Elec. Code §§ 82.001-.004.

### a.)   Early voting clerks conduct early voting, not the Secretary of State.

Early voting clerks conduct early voting in Texas elections, and for purposes of general elections for state and county officers, primary elections, and special elections ordered by the governor, the county clerk for the county in which the election is held—or the county's elections administrator if one has been appointed, as in Starr County—serves as the early voting clerk. Tex. Elec. Code §§ 31.043(2), 83.001, 83.002. Plaintiffs specifically challenge the handling of mail-in ballots cast in the March 2018 Democratic primary elections.  Dkt. No. 1-5 at ¶ 2. Accordingly, the county elections administrator—not a member of the Texas Secretary of State's Office—was required by statute to serve as early voting clerk.

Once designated, the early voting clerk is responsible for "review[ing] each application for a ballot to be voted by mail" and "provid[ing] an official ballot envelope with each ballot provided to a voter." Tex. Elec. Code §§ 86.001(a), .002(a). After a voter marks their mail-in ballot, they must then return the mail-in vote to the early voting clerk in the official carrier envelope. Tex. Elec. Code § 86.006(a). Notably, a person who elects

to vote by mail can return their mail-in ballot on election day to the early voting clerk while polls are open. Tex. Elec. Code § 86.006(a-1). But in any case, a voter must return the ballot so that it is received no later than the time before the polls close on election day or no later than 5 p.m. on the day after election day, if returned by mail. Tex. Elec. Code § 86.007(a).

The early voting clerk also determines whether an application is defective (Tex. Elec. Code § 86.008), provides corrected ballots to voters (Tex. Elec. Code § 86.009), and determines whether ballots voted by mail are timely (Tex. Elec. Code § 86.011).

### b.) County officials appoint elections judges, who in turn appoint the Early Voting Ballot Board to receive and count mail-in ballots.

County commissioners' courts appoint presiding election judges for each regular county election precinct, and state law sets out a detailed set of requirements for each appointed judge. Tex. Elec. Code §§ 32.001-.002. Under state law, County commissioners use the same process to appoint presiding election judges and EVBB presiding judges. Tex. Elec. Code § 87.002. The EVBB presiding judge then appoints at least two other members to the EVBB using the same method for appointing precinct election clerks. Tex. Elec. Code § 87.002(b). Once appointed and staffed, the EVBB is responsible for receiving the mail-in ballots from the early voting clerk, and then deciding whether to accept each vote. Tex. Elec. Code §§ 87.021-.041, 87.061 (declaring the EVBB as the authority responsible for counting ballots).

If a mail-in ballot is rejected, the EVBB presiding judge is required to deliver written notice to the voter no later than the tenth day after election day. Tex. Elec. Code § 87.0431. "If a county election officer . . . determines that a ballot was incorrectly rejected or accepted by the [EVBB] before the time set for convening the canvassing authority, the

county election officer may petition a district court for injunctive or other relief as the court determines appropriate." Tex. Elec. Code § 87.127(a).

## II.     Procedural History.

This action was initially filed in the 381st Judicial District Court of Starr County, Texas, on April 11, 2018, Cause No. DC-18-189. The initial plaintiffs were Leticia Garza Galvan and Martie Garcia Vela. *See* Dkt. No. 1-5. Defendant Rolando Pablos, the then-Texas Secretary of State, was sued in his official capacity and was served with Plaintiff's Original Petition on April 13, 2018. Dkt. No. 1 at 1. The other defendants named, Armandina Martinez, Alma Garcia, Alicia Dougherty Nos. 1 & 2, and Yolanda Martinez, were sued in their official and individual capacities. *Id.* At the time this suit was filed, Galvan and Vela also filed an election contest, captioned *Galvan v. Vera*, No. DC-18-186, in the 229th Judicial District of Texas.[2] Dkt. No. 1-5 ¶ 57.

After a ruling from the Court dismissing the Galvans from the case for lack of standing, *see* Minute Entry for Motion Hearing Held on March 19, 2019, the operative complaint was amended to add current-named plaintiffs Federico Flores, Jr., Maria Guerrero, and Vicente Guerrero, who allege that they submitted mail-in ballots in the 2018 Democratic primary, but that their ballots were improperly rejected due to perceived signature discrepancies. *See generally* Dkt. No. 58. As the initial plaintiffs did, current named Plaintiffs contend that Section 87.401 of the Texas Election Code violates due process and equal protection principles because the Texas Legislature granted exclusive authority to EVBBs to accept or reject ballots without expressly requiring a specific process for voters to cure errors with their mail-in ballots where an EVBB rejects a voter's

---

[2] Galvan and Vela lost their election contest at the district court, a ruling upheld on appeal by the Fourth Court of Appeals in San Antonio, Texas. *See Galvan v. Vera*, No. 04-18-00309-CV, 2018 WL 4096383 (Tex. App.—San Antonio Aug. 29, 2018, no pet.) (not reported).

mail-in ballot, in violation of due process and equal protection provisions of the federal Constitution. *See* Dkt. No. 58 ¶¶ 46-51; 52-55.[3]

## ARGUMENT AND AUTHORITIES

### I.  Standard of Review.

Federal courts favor granting summary judgment where no genuine fact issue exists. *See, e.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) ("Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole[.]"). The Supreme Court teaches that courts should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp.*, 477 U.S. at 322.

Disputes are genuine only where "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Of course, [t]he movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citation omitted). But where, as here, the burden of proof at trial lies with the nonmoving party, a defendant may satisfy its initial burden by "'showing'—that is, pointing out to this Court—that there is an absence of evidence to support the nonmoving party's case." *See Celotex Corp.*, 477 U.S. at 325; *Nat'l Ass'n of Gov't Emps. v. City Pub. Serv. Bd. of San Antonio, Tex.*, 40 F.3d 698, 712 (5th Cir. 1994).

---

[3] Plaintiffs' live pleading includes a third count amounting to an as-applied challenge of actions by the Starr County EVBB, but fairly read, Plaintiffs' count three does not make a claim against the Texas Secretary of State. *See* Dkt. No. 58 ¶¶ 56-59; *see also* Dkt. No. 43 at 3 (explaining that Plaintiffs' count three asserts arguments against the Starr County EVBB for the manner in which the EVBB reviewed carrier envelopes).

A defendant must demonstrate the absence of a genuine issue of material fact to win summary judgment, but it need not negate the elements of a plaintiff's case to carry their burden here. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (citation omitted). If a defendant meets its Rule 56 burden, the plaintiff must identify *specific* evidence in the record and articulate how that evidence supports his claim. *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007).  Plaintiffs cannot satisfy the burden by pointing out "'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'" *Boudreaux*, 402 F.3d at 540 (quotation omitted).

## II.   The Secretary of State Is Not a Proper Party.

Plaintiffs have not met their burden on two of the three threshold standing requirements. To establish standing, a plaintiff must show: (1) an actual or imminent, concrete and particularized injury-in-fact; (2) that is fairly traceable to the defendant's challenged action; and (3) that is likely to be redressed by a favorable decision. *Friends of the Earth, Inc. v. Laidlaw Envt'l. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000). Each element is "an indispensable part of the plaintiff's case." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). For the reasons discussed below, Plaintiffs lacks standing to bring claims against the Secretary of State because they have not alleged a fairly traceable injury. *See Friends of the Earth*, 528 U.S. at 180–81.

### A.  The Secretary of State does not supervise EVBBs.

The Secretary of State does not have a hand in county-level appointments of EVBBs, delivering or receiving mail-in ballots, or determining the validity of mail-in ballots. Plaintiffs concern themselves with the actual or potential conduct of the Starr County EVBB—not any actions of the Secretary of State. As noted above, the Starr County

8

EVBB was an independent body created through appointments at the *county level* pursuant to authority granted specifically to counties by the Texas Legislature.  EVBB members are not part of the Texas Secretary of State's Office nor are they employees or agents of the Secretary of State. EVBBs do not carry out their statutorily required functions at the behest or under the supervision of the Secretary of State. Indeed, it is the EVBB, not the Secretary of State, who received mail-in ballots from the county-level early voting clerk, determined the validity of ballots, and counted them. And it was a county-level official who had authority to review any ballot challenged and determine whether to seek judicial relief. *See* Tex. Elec. Code § 87.127(a).

Plaintiffs' allegations regarding the Secretary of State do not suffice to establish that the Secretary of State is a proper party. In the analogous context of a sovereign immunity defense brought by state officers sued in federal court, courts have dismissed claims when the individual officer sued lacked the requisite connection with proceedings to enforce the challenged statute. *Cf. Children's Healthcare is a Legal Duty, Inc. v. Deters*, 92 F.3d 1412, 1415-16 & n.10 (6th Cir. 1996) (holding that *Ex Parte Young* exception to sovereign immunity did not apply because attorney general had not commenced nor threatened to commence proceedings against plaintiffs under challenged law and because state "delegate[d] the enforcement of the challenged statutes to local prosecutors, not the Attorney General"); *Long v. Van de Kamp*, 961 F.2d 151, 152 (9th Cir. 1992) (per curiam) (explaining that under *Ex Parte Young*, there must be a connection between the defendant official and the unconstitutional statute's enforcement, including the official's threatened enforcement; "general supervisory powers" are not sufficient to establish required enforcement connection").

Despite the clear statutory delegation of authority by the Texas Legislature to county level EVBBs, Plaintiffs press forward arguing that the Secretary of State is the chief election officer in Texas. Dkt. No. 58 ¶ 10 (citing Tex. Elec. Code § 31.001). Critically, however, aside from the sole reference to the designation of the Secretary of State as the "chief election officer" for Texas, Plaintiffs do not and cannot identify any enforcement authority granted to the Secretary of State over EVBBs relevant to this lawsuit. That is because the Texas Legislature granted exclusive authority to county level officials to operate EVBBs. The EVBBs and local elections officials, not the Secretary, have the final authority with respect to the signature comparison mandated by statute. Nor do Plaintiffs point to any specific statutory language authorizing the Secretary of State to act against EVBBs by issuing orders concerning the counting or acceptance of mail-in votes.

Because Plaintiffs demonstrate neither a connection between the Secretary of State and the EVBB actions at issue in this case nor some imminent unconstitutional enforcement action by the Secretary of State, Plaintiffs cannot maintain their suit against the Secretary of State. Their alleged injuries are not at all traceable to any actions that the Secretary of State has taken or has failed to take. *See, e.g.*, *Inclusive Communities Project, Inc. v. Abbott*, 2018 WL 2415034, at *6 (N.D. Tex. May 29, 2018) (holding that group lacked standing to sue Governor Abbott where challenged provisions of law "do not provide Governor Abbott with the authority or 'definite responsibilities' to enforce the Statute."); *John Does #1-7 v. Abbott*, 345 F. Supp. 3d 763, 773 (N.D. Tex. 2018) ("Because Plaintiffs are unable to show how their alleged injuries are fairly traceable to Governor

Abbott's specific conduct, this Court joins other courts in declining to find traceability based solely on an official[']s general authority to enforce a state's laws.").[4]

## III.   Plaintiffs Lack Standing Because Their Injuries Would Not Be Redressed by an Injunction.

Plaintiffs also have failed to allege a case or controversy between them and the Secretary of State for a different reason: they have no viable claim for prospective injunctive relief, even against a properly named party.

The Supreme Court and the Fifth Circuit have repeatedly held that past harms are insufficient to create standing to seek prospective injunctive relief. *Los Angeles v. Lyons*, 461 U.S. 95, 105-07 (1983); *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974); *Deutsch v. Annis Enters., Inc.*, 882 F.3d 169, 172 (5th Cir. 2018) (per curiam); *Machete Prods., L.L.C. v. Page*, 809 F.3d 281, 288 (5th Cir. 2015). To obtain prospective injunctive relief, a plaintiff has the burden to establish standing by putting on evidence that the "threatened injury is 'certainly impending'" or that there is a "'substantial risk' that the harm will occur." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409, 414 n.5 (2013)).

---

[4] Plaintiffs have previously pointed to *OCA-Greater Houston v. Tex.*, 867 F.3d 604 (5th Cir. 2017) for the proposition that the Secretary of State is a proper party. But *OCA-Greater Houston* addressed whether the Secretary was a proper party to a facial challenge where an organization challenged a state election statute as violating a federal statute that allegedly impacted its members. *OCA-Greater Houston*, 867 F.3d at 612-13. Specifically, the state statute at issue in *OCA-Greater Houston* barred a voter's son from serving as the voter's interpreter because the son was not registered to vote in the same county as his mother. During the litigation, the voter passed away, ending the 42 U.S.C. Section 1983 claim, and leaving only a facial challenge by OCA-Greater Houston brought pursuant to Section 208 of the Voting Rights Act. After analyzing organizational standing and the Secretary of State's redressability arguments, the Fifth Circuit found that the Secretary of State was the proper party for the facial challenge under Section 208 of the VRA. This case, however, raises both a facial challenge and an as-applied challenge for alleged violations of personal constitutional rights, *i.e.*, due process and equal protection of law, not a purported violation of a federal statute brought by an organization to vindicate rights statewide. *OCA-Greater Houston* should not be extended beyond the unique factual circumstances presented there.

In *Deutsch*, for example, a man who used a wheelchair alleged a violation of the Americans with Disabilities Act when he encountered several physical obstacles while entering a women's hair salon. 882 F.3d at 172. The Court dismissed his lawsuit for lack of standing because he failed to demonstrate that he ever intended to visit the salon again. *Id.* at 174. As the Court stated, "[m]erely having suffered an injury in the past is not enough; the plaintiff must show a 'real or immediate threat that the plaintiff will be wronged again.'" *Id.* at 173 (quoting *Lyons*, 461 U.S. at 111).

This "real or immediate threat" element of standing is missing here. In sworn deposition testimony, Plaintiffs have affirmatively disclaimed an intent to vote by mail in future elections. *See* Ex. A at 20:21-25; 21:9-19; 23:9-18; Ex. B at 14:17-22; 19:16-18; Ex. C at 9:14-23. And the procedures for voting by mail are the only procedures at issue in this lawsuit; Plaintiffs do not challenge the procedures for submitting ballots in person or any other method. *See* Dkt. No. 58 ¶¶ 46-51; 52-55. Accordingly, no ruling from the Court will redress Plaintiffs' injuries because they do not intend to vote by mail again in any election on a going forward basis. They therefore lack standing to sue for prospective injunctive relief. *See Deutsch*, 882 F.3d at 173.

## IV.    Texas Election Laws Are Constitutionally Sound.

Even if Plaintiffs could meet their burden of establishing traceability and redressability, for the reasons discussed below, their claims still fail on the merits when analyzed under the *Anderson/Burdick* balancing test.

### A.    State election laws are reviewed under the *Anderson/Burdick* balancing test.

"[T]he Constitution of the United States protects the right of all qualified citizens to vote, in state as well as in federal elections." *Reynolds v. Sims*, 377 U.S. 533, 554 (1964).

"It does not follow, however, that the right to vote in any manner . . . [is] absolute." *Burdick*, 504 U.S. at 433.

The Supreme Court has observed that "[c]ommon sense, as well as constitutional law, compels the conclusion that government must play an active role in structuring elections; 'as a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes.'" *Burdick*, 504 U.S. at 433 (quoting *Storer v. Brown*, 415 U.S. 724, 730 (1974)). Thus, because all election regulations impose some burden upon individual voters not every voting regulation is subject to strict scrutiny. *See, e.g.*, *Veasey v. Abbott*, 830 F.3d 216, n.46 (5th Cir. 2016) (citing *McDonald v. Bd. of Election Comm'rs of Chicago*, 394 U.S. 802 (1969), for the proposition that rational-basis review applies when examining different methods of casting votes).

To that end, federal courts have recognized that a "flexible standard [of review] applies" when analyzing state election laws that may burden the right to vote. *Burdick*, 504 U.S. at 434. The so-called *Anderson/Burdick* balancing test, an analysis arising from the Supreme Court's holdings in *Anderson v. Celebrezze*, 460 U.S. 780 (1983) and *Burdick*, 504 U.S. 428 (1992), requires "[a] court considering a challenge to a state election law" to "weigh the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments . . . against the precise interests put forward by the State . . . taking into consideration the extent to which those interests make it necessary to burden the plaintiff's rights." *Burdick*, 504 U.S. at 434.

Under this "flexible standard" of review, strict scrutiny applies only when the right to vote is "subjected to 'severe' restrictions." *Id.* However, "when a state election law provision imposes only reasonable, nondiscriminatory restrictions upon the First and

Fourteenth Amendment rights of voters, the State's important regulatory interests are generally sufficient to justify the restrictions." *Id.*; *see also Celebrezze*, 460 U.S. at 788.

When evaluating state election laws, courts consider the state's election regime as a whole, including aspects that mitigate hardship that might be imposed by the challenged provisions. *See Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181, 199 (2008) (considering mitigating aspects of Indiana's election laws); *see also Ohio Democratic Party v. Husted*, 834 F.3d 620, 627-28 (6th Cir. 2016) (recognizing the numerous opportunities to cast a ballot as a mitigating factor to a law altering early voting rules).

Proponents, such as the Plaintiffs in this case, advancing a facial challenge to state election law "bear a heavy burden of persuasion." *Crawford*, 553 U.S. at 200.

## B. The burden on voting rights is minimal.

Plaintiffs argue that the mail-in ballot provisions of the Texas Election Code violate the Due Process Clause because the statute fails to provide for notice that a voter is being disenfranchised and given an opportunity to be heard. What Plaintiffs' argument misses is that "[o]rdinary and widespread burdens [on the right to vote], such as those requiring 'nominal effort' of everyone, are not severe." *Crawford*, 553 U.S. at 225 (Scalia, J., concurring). "Burdens are severe if they go beyond the merely inconvenient." *Id.*

As an initial matter, mail-in voters are given notice that their genuine and accurate signatures are required. *See* Tex. Elec. Code § 87.041(b)(2). The EVBB will also turn to signatures on file with the county clerk or voter registrar, if necessary to evaluate a signature. Tex. Elec. Code § 87.041(e). After voting, if a ballot is rejected for a signature mismatch, state law requires notice be sent to the voter. Tex. Elec. Code § 87.0431. And, if the signature needs to be updated to cure any mismatch for future elections, the voter

can update the signature on file with the county clerk or voter registrar. Tex. Elec. Code § 87.041(e).

The burden to make sure that a signature matches when signing an absentee ballot is no more a burden than the burden placed on in-person voters, who must travel to a designated polling place on Election Day, often necessitating taking time off of work, arranging for childcare, and waiting in line.

The Supreme Court has previously concluded that similar laws, requiring nominal effort of everyone, are not severe. For example, in *Crawford*, the Supreme Court considered whether a state's voter-identification law, which required in-person voters to present photo identification, unconstitutionally burdened the right to vote. *Crawford*, 553 U.S. at 185. In an opinion authored by Justice Stevens, the Court found that "the inconvenience of making a trip to the [Bureau of Motor Vehicles], gathering the required documents, and posing for a photograph surely does not qualify as a substantial burden on the right to vote, or even represent a significant increase of the usual burdens of voting." *Id.* at 198.

Here, the challenged law does not run afoul of *Crawford*. Rather, it requires only that vote-by-mail voters take the initiative to update their signatures—at any time prior to an election—and make sure they are using the same signature when signing their mail-in ballot. The requirements are no more than one of the "usual burdens of voting." *Crawford*, 553 U.S. at 198. Moreover, in *Crawford*, the Supreme Court recognized that the voter-identification law at issue might place "a somewhat heavier burden . . . on a limited number of persons," but the Court declined to consider these burdens because "on the basis of the evidence in the record it [was] not possible to quantify either the

magnitude of the burden on this narrow class of voters or the portion of the burden imposed on them that [was] fully justified." *Crawford*, 553 U.S. at 199-200.

So too here.

There is no competent evidence suggesting the actual number of voters whose genuine signatures were improperly rejected, and at least two state courts—one a district court and one an appellate court—have rejected challenges to the results of the election that included a challenge concerning mail-in ballots.

At bottom, Plaintiffs' complaints about properly cast votes rejected in the signature-comparison process do not yield a harm large enough to outweigh Texas's interest in maintaining the integrity of elections.

## C. Plaintiffs disregarded the process available to them.

Plaintiffs argue that the EVBB rejected "an incredible 13.5%" of mail-in ballots submitted in the March 2018 democratic primary. Dkt. No. 58 ¶ 4. But their protestations that they lack any means of challenging rejected ballots directly conflict with Texas law. "If a county election officer . . . determines that a ballot was incorrectly rejected or accepted by the [EVBB] before the time set for convening the canvassing authority, the county election officer may petition a district court for injunctive or other relief as the court determines appropriate." Tex. Elec. Code §§ 87.127(a), 31.091(1).

Thus, Plaintiffs could have petitioned to the county election officer—in this case the Starr County Elections Administrator John Rodriguez[5]—and raised their concerns with their rejected ballots to ascertain whether the county election officer would file suit to challenge the EVBB's decisions. But Plaintiffs concede that they never spoke with any

---

[5] *See* http://www.co.starr.tx.us/page/starr.Elections.

official in Starr County—or for that matter, any official in the Secretary of State's office—after their ballots were rejected. Ex. A at 17:12-22; 19:14-16; 20:7-10; Ex. B, at 14:17-22; 19:16-18; Ex. C at 12:10-25–13:1-10. They cannot claim that the procedures prescribed by Texas law are inadequate when they completely failed to take advantage of those procedures. *See, e.g.*, *Santana v. City of Tulsa*, 359 F.3d 1241, 1244 (10th Cir. 2004) ("A party cannot create a due process claim by ignoring established procedures."); *see also, e.g.*, *Dubuc v. Twp. of Green Oak*, 406 F. App'x 983, 989 (6th Cir. 2011) (holding that property owners who failed to take advantage of a zoning board's postdeprivation appeals procedures could not claim that those procedures violated due process); *Herrell v. Benson*, 261 F. Supp. 3d 772, 777–78 (E.D. Ky. 2017) (noting that the plaintiff "was afforded due process, but waived his right to it by refusing to participate in the process offered to him.").

### D. The State's important interests justify the challenged law.

When restrictions on due process rights of voters are reasonable and not a severe burden—as in this case—the State's important regulatory interests are generally sufficient to justify the restriction. *Burdick*, 504 U.S. at 434. Here, Texas's mail-in ballot requirements promote Texas's interests in—

➢ Preserving the integrity of its election process;

➢ Maintaining an orderly election process and preventing dilution of votes by those who are not eligible to vote; and,

➢ Ensuring administrative convenience and efficiency.

Texas "indisputably has a compelling interest in preserving the integrity of its election process." *Eu v. San Francisco Cty. Democratic Central Comm.*, 489 U.S. 214, 231 (1989); *see also Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006) (acknowledging "the State's

compelling interest in preventing voter fraud"); *Veasey v. Abbott*, 830 F.3d 216, n.46 (5th Cir. 2016) ("[T]he greatest fraud risk exists when unauthorized persons direct an elderly, immobile voter's choices on a mail-in ballot. That the ballots could get lost or stolen from the mail is no more a risk than the loss of a Social Security check."); *Crawford*, 553 U.S. at 225 (Souter, J., dissenting) (noting that "absentee-ballot fraud . . . is a documented problem"); *Griffin v. Roupas*, 385 F.3d 1128, 1131 (7th Cir. 2004) ("Voting fraud . . . is facilitated by absentee voting.").

Plainly stated: Texas has a weighty, undeniable interest in ensuring that only eligible voters cast mail-in ballots, necessitating various requirements to guarantee the reliability of mail-in votes and provide for finality on Election Day.

Because complying with the nominal effort of properly signing a ballot is not a harm that outweighs Texas's weighty interests in protecting the franchise, Plaintiffs' due process claim fails.

## V.    Plaintiffs' Equal Protection Claim Also Fails Under *Anderson/Burdick.*

*Anderson/Burdick* applies to Equal Protection claims directed at state voting laws. *Stringer v. Pablos*, 320 F. Supp. 3d 862, 897–98 (W.D. Tex. 2018) (citing several election law cases applying the *Anderson/Burdick* framework). Plaintiffs' equal protection challenge fails for the same reasons their due process challenge must be rejected—"the character and magnitude of the asserted injury" is slight and Texas's regulatory interests sufficiently weighty to justify the restrictions. Plaintiffs' equal protection challenge fails for an additional reason—the categories of voters Plaintiffs allege are unequally treated are not "similarly situated" for purposes of the law challenged in this action.

Plaintiffs compare mail-in voters to provisional ballot voters, in attempt to contrast the process afforded. Dkt. No. 58 ¶¶ 34-40. The two are not the same. A mail-in voter is a person already qualified to vote. *E.g.*, Tex. Elec. Code ch. 82 (listing categories of eligible "qualified" voters and identifying qualifications for such qualified voters to early vote by mail). A provisional voter, on the other hand, is a person who lacks credentials evidencing qualifications to vote in a precinct. *See* Tex. Elec. Code ch. 63.

A key difference between the two is that provisional ballot voters generally have already proven their identification when they show up to vote in person. The exception is for provisional ballots because of a lack of identification. For such votes to count, the voter has to show proper identification at the voter registrar's office. The same cannot be said of mail-in ballot voters, which is why the state has so many safeguards in place to verify identity.

The challenges and impediments to voting by mail raise concerns different from an in-person voter claiming authorization to vote and who lacks adequate credentials to demonstrate a right to vote. The two sets of voters are not similarly situated, and thus, cannot serve as comparators for purposes of an equal protection violation.

Thus, even if Plaintiffs could identify something more than harm from the nominal effort required to outweigh Texas's interest in protecting its elections, Plaintiffs' equal protection claim would still fail for lack of a valid comparator.

## CONCLUSION

For the foregoing reasons, Plaintiffs' claims against the Texas Secretary of State should be dismissed.

**Dated:** July 29, 2019.

**Respectfully submitted**.

**KEN PAXTON**
Attorney General of Texas

**JEFFERY C. MATEER**
First Assistant Attorney General

**DARREN L. MCCARTY**
Deputy Attorney General for Civil Litigation

**THOMAS A. ALBRIGHT**
Chief, General Litigation Division

*/s/ Michael R. Abrams*
**MICHAEL R. ABRAMS**
Southern District ID No. 2513900
Texas Bar No. 24087072
Attorney-in-Charge
Assistant Attorney General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Telephone: (512) 463-2120
Facsimile: (512) 320-0667
michael.abrams@oag.texas.gov

**Counsel for Defendant**
**Texas Secretary of State**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was filed electronically with the Court and delivered by CM/ECF on July 29, 2019 to all counsel of record.

/s/ *Michael R. Abrams*
Michael R. Abrams
Assistant Attorney General