IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | |
|---|---|
| FREDERICO FLORES, MARIA GUERRERO, and VICENTE GUERRERO, §§§§ *Plaintiffs,* | |
| v. §§§ | Civil Case No. 7:18-cv-00113 |
| THE TEXAS SECRETARY OF STATE, and ARMANDINA MARTINEZ, ALMA GARCIA, ALICIA DOUGHERTY NO. 1, ALICIA COUGHERTY NO. 2, YOLANDA MARTINEZ, §§§§§§ *Defendants* | |

**DEFENDANTS MARTINEZ, GARCIA, DOUGHERTY NO. 1, DOUGHERTY NO. 2 AND MARTINEZ'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT AND MOTION FOR SUMMARY JUDGMENT**

**TO THE HONORABLE DISTRICT COURT JUDGE RICARDO H. HINOJOSA**

**I.     Introduction**

Plaintiffs Frederico Flores, Maria Guerrero, and Vincente Guerrero, have sued the Texas Secretary of State and the members of the Starr County's Early Voting Ballot Board ("EVBB") for violating their rights as mail-ballot participants. *See* Dkt. 58 (Plaintiffs' Second Amended Complaint) In their complaint, the Plaintiffs allege that Texas' longstanding mail-ballot acceptance law violates the equal protection clause of the U.S. Constitution because Texas law does not allow rejected mail-ballot voters to cure the deficiencies in their votes and that there are no uniform standards applied to the acceptance and rejection of mail-in ballots. *Id.* They further allege that the manner in which the EVBB Defendants administered the acceptance and rejection

1

of mail-in ballots in the Starr County Democratic Primary violated their rights. Dkt. 58, ¶¶ 56-59. All of these counts must be dismissed.

First, the Plaintiffs do not have standing. Frederico Flores' ballot could not counted because his ballot was illegally harvested by a campaign worker. Whether or not the law relating to mail-in ballots violates his constitutional rights is of no consequence, his vote should not have been counted and, therefore, he has not been injured. Even if, his ballot could be accepted, Mr. Flores does not have standing to seek prospective injunctive relief as he does not intend to vote by mail ever again. Additionally, Mr. Flores admits that his signature on the carrier envelope of his mail ballot does not match the signature on his mail ballot application. If the signatures do not match, the EVBB defendants did not violate his rights and his ballot was properly rejected under Texas law.

Likewise, the Guerreros also do not have standing to receive the extraordinary remedy of prospective injunctive relief. In their depositions, the Guerreros admitted that they will never vote by mail again. Also, in their depositions the Guerreros admit that the signatures on their mail-ballot applications do not match the signature on their mail-ballot carrier envelopes. Their ballots were properly rejected by the EVBB.

At all times, the EVBB acted in accordance with Texas law. The EVBB did not apply illegal standards or procedures that violated the rights of the plaintiffs. Plaintiffs have not been injured by the actions of the EVBB and their causes of action must be dismissed.

## II. The Plaintiffs have failed to State a Claim for which Relief may be Granted

### A. Legal Standards for Federal Rule of Procedure 12 (b) 6

The United States Constitution limits the jurisdiction of the federal courts to "Cases" or "Controversies." U.S. CONST., Art. III, § 2; *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (quoting U.S. CONST., Art. III, §§ 1, 2). Standing to sue, a doctrine rooted in the traditional understanding of a case or controversy, serves to "confine[] the federal courts to a properly judicial role." Id. "As the part[y] invoking jurisdiction," Plaintiffs bears the "burden of establishing standing." *Texas v. U.S.*, 809 F.3d 134, 154-5 (5th Cir. 2015), as revised (Nov. 25, 2015), cert. granted, 136 S. Ct. 906 (2016).

Under Federal Rules of Civil Procedure 12(b)(6), a purported cause of action may be dismissed when the complaint fails to state a claim upon which relief can be granted. To survive a motion to dismiss under Rule 12(b)(6), the complaint must meet two criteria: 1) it must assert a plausible claim, and 2) it must set forth sufficient factual allegations to support the claim. *Ashcroft v. Iqbal*, 129 S. Ct. at 1949-50. (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)); *see also Frith v. Guardian Ins. Co. of Am.*, 9 F. Supp. 2d 734, 737-38 (S.D. Tex. 1998). (explaining that dismissal can be based on a lack of cognizable theory or the absence of sufficient facts alleged under a cognizable legal theory).

"A complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'" *Iqbal*, 129 S. Ct. at 1949. A claim has facial plausibility when the plaintiff pleads enough factual content that allows the court to draw the reasonable inference that the defendant is liable under the alleged claim. *Id.* Even if the facts alleged are specific and go beyond mere recitation of the elements of a cause of action, the facts must also "plausibly suggest an entitlement to relief." *Id.* at 1951.

Plaintiffs must establish "(1) an injury in fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) and a likelihood that the injury will be

redressed by a favorable decision." *Gill v. Whitford*, 138 S. Ct. 1916, 1929 (2018). As described by the Court: "[f]oremost among these requirements is injury in fact—a plaintiff's pleading and proof that he has suffered the "invasion of a legally protected interest" that is "concrete and particularized," i.e., which "affect [s] the plaintiff in a personal and individual way."' *Id*. (quoting *Lujan v. Defenders of Wildlife*, 504 U. S. 555, 560 (1992).

**B.     Plaintiffs' factual allegations concerning the EVBB are plainly insufficient**

The Plaintiffs devote only three paragraphs out of a 17 page complaint describing their "as applied" challenge to the EVBB actions in rejecting or accepting ballots. The Plaintiffs allege that "the Starr County EVBB exacerbated the constitutional infirmities in the March 2018 primaries by the particular manner in which it undertook review of the carrier envelopes." Dkt. 58, ¶ 56. Further, "[t]he Starr County EVBB in the March 2018 primaries divided the 987 mail ballot carrier envelopes they claim to have received into stacks for each individual EVBB member to review, and each individual member decided whether to accept or reject a given ballot in their stack." *Id.* at ¶ 57. Finally, the plaintiffs allege that "the voters whose ballots were cast in Starr County were subjected to unequal treatment within the EVBB itself, as the standards of review applied by each member of the board inarguably varied."

These paragraphs are the **only** factual underpinnings of the Plaintiff's "as applied" challenge relating to the actions of the EVBB. These allegations are conclusory statements completely devoid of any description of the actions taken by the EVBB defendants that caused the specific injury experienced by the defendants. The allegations are vague and without substance. There are no factual allegations that would aid the Court in its understanding of the Plaintiffs' claims. These allegations are mere threadbare restatements of the elements of unequal protection. Taken as true, the allegations paint a picture of the EVBB Defendants as no different

4

than any other multi-member deliberative body. The vague assertion that the standard of review "inarguably varied" between members of the EVBB cannot solely prove up an "as applied" equal protection claim. Small variations of interpretation between members of a multi-member board cannot not give rise to unequal treatment or absurdity would surely follow. There must be stark and cruel deviations from uniform procedure to justify the invalidation the actions of public officers. This is why clarity and specificity are critical in factual allegations for "as applied" challenges. These factual allegations also do not make a causal connection between the alleged variation among EVBB defendants and the rejection of the mail-in ballots of the named plaintiffs.[1] Without this connection, there is no factual bridge between the actions of the defendants and the injuries of the plaintiffs. Without these allegations, this Court is robbed of its jurisdiction to consider this claims. *See: Shaw v. Villanueva*, 918 F. 3d 414, 417-19 (5th Cir. 2019) ("[N]aked allegations or legal conclusions masquerading as something more will not thwart dismissal.")

    **C.**    **The New Plaintiffs still do not have Standing**

    **(i)**    **Frederico Flores**

The Second Amended Complaint alleges that Frederico Flores' mail-in ballot was wrongly rejected because of a signature mismatch. Dkt. 58, ¶ 41. Further, it alleges that he will vote by mail in future elections. *Id*. at 42. Both of these claims are empirically disproven by the Plaintiffs own testimony.

Texas law prescribes the unauthorized harvesting of mail-in ballots. Generally, a mail- in ballot may not be counted if the ballot was in possession of person other than the voter. Tex.

---

[1] This is critical, as will be made plain from a careful review of the plaintiffs own statements concerning how each characterizes the signatures on their mail ballot application and their carrier envelopes.

Elec. Code § 86.006 (g). There are exceptions to the law for postal carriers, certain family members, and for people living in the same household. *See generally* Tex. Elec. Code § 86.006 (f)(1-4). The statute is strict and does not require fraud. If a mail-in ballot is in the possession of another, then it may not be counted. Frederico Flores' ballot was harvested by a third-party. His vote cannot count.

> "Q. I want to -- you said a lot of information there, so I want to kind of unpack some of that. Which election were you referring to there?
>
> A. Well, I didn't pay attention. I mean, I've always voted. I vote here from the house all the time. They always bring me that form, but I don't remember which that one was.
>
> Q. So when you say you vote by the house in the home, do you mean that you vote by mail?
>
> A. **Either that or that person that brings me the form that picks it up for me, and that person takes it.**
>
> Q. But it's still a mail ballot, correct?
>
> A. **Yes**."

Frederico Flores Dep. 9:13-25, May 13, 2019. (emphasis added). Even if Mr. Flores' mail-in ballot was rejected improperly by EVBB defendants, there is no injury because his ballot could not have been lawfully counted as it was illegally harvested. If his mail-in ballot was illegal, then there is no injury.

Further, Mr. Flores does not intend to vote by mail in future elections. ("Will you vote by mail again? A. Well, I'm going to try to go in person this time."). Flores Dep. 20:21-22, May 13, 2019. Mr. Flores makes it clear that no matter the future circumstances that he will not be voting by mail. (Q. Well, I'm asking you if there's nobody to take you to vote in person and -- would you like to vote by mail in that instance? A. **Well, no, I wouldn't like to vote like that again.** I mean, there's no reason why I wouldn't be able to go and vote like that. It's not that far, just to that small house that's there, unless you're ill, but I'm fine -- if I'm fine, I can go in the car.

Maybe I'll buy a hamburger on the way back.") Flores Dep. 25: 7-15, May 13, 2019. (emphasis added). If Mr. Flores will not vote by mail in the future, then there is no "likelihood that the injury will be redressed by a favorable decision." *Gill v. Whitford*, 138 S. Ct. 1916, 1929 (2018).

Mr. Flores' cause of actions must be dismissed.

**(ii)    Maria & Vicente Guerrero**

The Guerreros' ballots were also harvested by campaign workers. (See: M. Guerrero dep., July 25, 2019, 18: 12-25, 19:1-2: Attachment No. 1)("Q  And so did Ms. Barrios and Ms. Vela, did they take you ballot with them. A  Yes.") Although ballots may be in the possession of another person, if that assistance is notated on the carrier envelope, the voter must qualify for assistance or else the assistance is inappropriate. *See* Tex. Elec. Code §§ 86.006 (f)(4)(A)(B), 86.0051, 86.010. In order to allow a person other than the voter to be in possession of the ballot, the voter must be eligible for assistance. Voters are only eligible for assistance if they are disabled or do not read and write the language of the ballot. The Guerreros are not disabled. The can read and write Spanish, which is one of the ballot languages. The Guerreros were not eligible for assistance. Ballots cast by voters who receive inappropriate assistance may not be counted. Tex. Elec. Code § 64.037. The Guerreros ballot could not have been counted by law. Therefore, there is no injury in the rejection of their illegally cast votes.

In addition, just like Mr. Flores, the Guerreros do not intend to vote by mail in future elections. When asked if in future elections they would vote by mail both responded that they would vote in person. See: M. Guerrero Dep. 19: 16-18 ("I'm going to go in person."); V. Guerrero Dep. 20:1-6 ("I'm not voting by mail, no.")

### III. The EVBB Defendants are entitled to Qualified Immunity

The EVBB defendants, herein assert that they are entitled to qualified immunity on all of Plaintiff's § 1983 claims against them in their individual capacities and, as such, move this Honorable Court to dismiss Plaintiffs' § 1983 claim against them on the ground that they are entitled to qualified immunity. The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

Because qualified immunity is "an immunity from suit rather than a mere defense to liability ... it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth,* 472 U. S. 511, 526 (1985). It is the plaintiff's burden to overcome a defendants' assertion of qualified immunity. *Saldana v. Garza,* 684 F.2d 1159, 1163 (5th Cir.1982), *cert. denied,* 460 U.S. 1012, 103 S.Ct. 1253, 75 L.Ed.2d 481 (1983). In determining whether an official is entitled to qualified immunity, two separate inquiries are conducted. The first is whether the facts alleged show that the defendant's conduct violated a constitutional right. *Saucier v. Katz,* 533 U.S. 194, 201, (2001), *overruled in part by Pearson v. Callahan,* 555 U.S. 223 (2009); *Shaw v. Villanueva* 918 F. 3d 414, 417 (5th Cir. 2019).. Additionally, it is important to note in conducting this inquiry that to state a claim against a defendant sued in his individual capacity, a plaintiff must satisfy a heightened pleading standard. *Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002). The next inquiry is whether the right violated was clearly established at the time. *Shaw,* 918 F. 3d at 417; *Id.* at 815–16.

In addition, an official's acts only violate clearly established law if "at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official

would have understood that what he is doing violates that right." *Ashcroft v. Al–Kidd,* ––– U.S. –––, ––––, 131 S.Ct. 2074, 2083, 179 L.Ed.2d 1149 (2011) (internal quotation marks and brackets omitted). Conversely, if a reasonable government official in a defendant's position would have believed that his conduct conformed to the constitutional standard in light of the information available to him and the clearly established law, then that Defendant is entitled to qualified immunity. *Freeman v. Gore*, 483 F.3d 404, 415 (5th Cir. 2007).

Claims of qualified immunity may be raised in a Rule 12(b)(6) motion to dismiss. *Morales v. State of Louisiana*, 74 F.3d 1236 (5th Cir. 1995). When evaluating a defendant's qualified immunity defense within the context of a Rule 12(b)(6) motion, a district court must first find "that the plaintiff's pleadings assert facts which, if true, would overcome the defense of qualified immunity." *Backe v. LeBlanc,* 691 F.3d 645, 648 (5th Cir.2012). Specifically, Plaintiff must plead specific facts: (1) to allow the court to draw the reasonable inference the defendant is liable for the harm alleged; and (2) which would defeat a qualified immunity defense. *Id.* Furthermore, a plaintiff's Section 1983 claim must establish that the alleged constitutional deprivation was intentional or due to deliberate indifference and not merely the result of negligence. *Farmer v. Brennan*, 511 U.S. 825, 828-29, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).

The Texas Election Code requires the EVBB to, among other things, do the following:

> (a) The early voting ballot board shall open each jacket envelope for an early voting ballot voted by mail and determine whether to accept the voter's ballot.
>
> (b) A ballot may be accepted only if:
>
> > (1) the carrier envelope certificate is properly executed;
> >
> > (2) **neither the voter's signature on the ballot application nor the signature on the carrier envelope certificate is determined to have been executed by a person other than the voter, unless signed by a witness;**

9

Section 87.041, Texas Election Code.

Thus the EVBB was required by Texas law to examine the mail-in ballots to determine whether the voter's signature on the ballot application and the carrier envelope matched. Nothing in today's jurisprudence suggests that requirement is unconstitutional.

Nothing in Plaintiffs' complaint establishes that the defendant's conduct violated a clearly established constitutional right, much less that at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right.

Moreover, the notion that individual members of the EVBB reviewed ballots independently as alleged, was raised in the state court election challenge and reviewed by the Texas 4th Court of Appeals. *Galvan v. Vera*, 2018 WL 4096383, at 5 (CA 04-18-00309, Court of Appeals, San Antonio, Texas, August 29, 2018 no. pet.). On the allegation of the Plaintiffs with regard to the EVBB, the State appellate court determined:

> "Finally, Galvan and Vela contend the trial court erred in failing to find the early voting ballot board's failure to review the ballots as a board invalidates their decisions. Section 87.041(a) of the Election Code provides, "The early voting ballot board shall open each jacket envelope for an early voting ballot voted by mail and determine whether to accept the voter's ballot." TEX. ELEC. CODE ANN. § 87.041(a) (Supp. 2017). Section 87.041 (b) lists the seven requirements that must be met in order to accept a ballot, and section 87.041(d) provides a ballot must be rejected if any requirement prescribed by subsection (b) is not satisfied. *Id.* §§ 87.041(b), 87.041(d). Nothing in the statute, however, dictates the procedures the board is required to follow in making its determination. In this case, individual board members reviewed the ballots for compliance with the requirements and consulted other board members with questions. Because the statute does not dictate a procedure the board must follow in making its decision to accept or reject a ballot, we hold the procedure used by the board did not invalidate the board's decisions."

Thus, not only would a reasonable government official, like a member of the Starr County EVBB, have believed that her conduct conformed to the constitutional standard in light

of the information available to her, the clearly established law under the laws of Texas as determined by Texas courts found that her conduct was appropriate. Further, no intentional constitutional injury could have been contemplated by the EVBB Defendants under the circumstances alleged by the Plaintiff. The EVBB Defendants are entitled to qualified immunity.

### IV. EVBB Defendants are entitled to Summary Judgment

#### A. Legal Standards for a Motion for Summary Judgment

"A party against whom relief is sought may move at any time, with or without supporting affidavits, for summary judgment on all or part of the claim." Fed. R. Civ. Proc. 56(b). A summary judgment movant may either submit evidence that negates the existence of a material element of the opponent's claim on which the opponent has the burden of proof or may demonstrate that there is insufficient or no evidence in the record that supports such claim. *Bourdeaux v. Swift Transp. Co. Inc.*, 402 F.3d 536, 540 (5th Cir. 2005); *Lincoln General Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005). An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." A*nderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Anderson* at 247-48. When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a motion for summary judgment by resting on the allegations of its pleadings. It must identify record evidence that support each element of its claim. *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 305 (5th Cir. 2004). Rule 56 mandates the entry of summary judgment against a party who fails to, in response to a motion for summary judgment, establish the existence of an essential element of that party's case. *Beard v. Banks*, 126 S. Ct. 2572, 2578 (2006).

### B. The Parties admit that there Signatures do not match

The EVBB defendants were required to follow the law. "The [EVBB] may determine whether to accept early voting ballots voted by mail in accordance with Section 87.041 at any time after the ballots are delivered to the board." Tex. Elec. Code § 87.0241(a). To accept a voter, the EVBB "may be accepted only if … neither the voter's signature on the ballot application nor the signature on the carrier envelope certificate is determined to have been executed by a person other than the voter, unless signed by a witness." Tex. Elec. Code 87.041. The law is clear that if the signatures do not match, then the EVBB may not accept the mail-in ballot.

Every plaintiff has stated that the signatures on the mail-in ballot carrier envelope and the mail-in ballot application do not match. To be clear, the plaintiffs are adamant that all of the signatures are the voters. However, the plaintiffs are equally adamant that their signatures do not match. Mr. Flores makes clear that his signature differs in several important ways:

> "Q. Mr. Flores, how were you notified that your ballot in the March 2018 Democratic Primary was being rejected?
>
> A. Well, this person, Amalia, she brought me this and said that it had been rejected because of my signature. Not only mine. Several forms -- ballots had been rejected, and, I mean, that they were going to look into this and check. **I mean, I agree because, I mean, I wasn't signing the same way due to the condition on my hands.**
>
> Q. So would you say that there's a difference in your signature between the application and the carrier envelope?
>
> A. **Well, I mean, for example, here on the F -- the F, I mean, I try to -- it could be that the F -- I slipped there**, but, I mean, I try to sign the same way all the time, but I know that's my handwriting."

Flores Dep. 14:15-15:6, May 13, 2019.

The Guerrero's likewise admit that the signatures do not match. On Plaintiff Maria Guerrero's deposition exhibit # 1, Plaintiff's signature on her mail ballot application is plainly spelled out as "Guerro" in cursive. (Attachment No. 3, p. 2). On page 3 of the exhibit is Ms. Guerrero's signature on the carrier envelope for her mail in ballot and it is signed in cursive as "Guerrero". Ms. Guerrero admits that they are different, but explains that on the application form she shortened her signature to avoid writing over the "date". (M. Guerrero Dep. Exh. 1, p. 1, #2)(Attachment No. 3) Yet, no date was placed on the application. Nevertheless, the signatures are clearly different and she admits that they are. (See M. Guerrero Dep. 10: 8-16) Similarly, on page one of Vicente Gurerrero's deposition exhibit he testified he signed "Guerrero" . (V. Guerrero Dep. 11: 8-9) (Attachment No. 2) Yet, the signature on his mail-in ballot application the signature affixed appears to be "Guerceo" in cursive and on his carrier envelope "Gurruo" in cursive. (V. Guerrero, Dep., Exhibit 1). (Attachment No. 4) While the carrier envelope indicates Mr. Guerrero was assisted by Barbara Barrios, he insisted that no one helped him and he signed the documents himself. (V. Guerrero Dep. 11: 1-9). (Attachment No. 2).

The members of the EVBB, followed the Texas election law, reasonably evaluated the signatures on Plaintiffs' mail in ballot application with the signatures on the mail in ballot carrier envelope, and by Plaintiffs' own admission, determined they did not match.

## V. Conclusion

For the foregoing reasons, the Plaintiffs cause of action should be dismissed.

DATED: July 29, 2019                    Respectfully,

By: /s/ Jose Garza

GARZA GOLANDO MORAN
Jose Garza Attorney-In-Charge
garzpalm@aol.com
Texas Bar No. 07731950

Martin Golando
Texas Bar No. 24059153
405 N. St. Mary's, Suite 700 San Antonio,
Texas 78205 (210) 892-8543
Attorneys for EVBB Defendants

## CERTIFICATE OF SERVICE

I certify that, on July 29, 2019, I filed the foregoing EVBB Defendants' Motion to Dismiss with the Court's ECF/CM system, which will serve a copy on all counsel of record.

*/s/ Jose Garza*

Jose Garza