IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF SAN FRANCISCO

**FILED**
San Francisco County Superior Court

MAR 0 5 2018

CLERK OF THE COURT
BY: _____ Deputy Clerk

| | |
|---|---|
| PETER LA FOLLETTE; and THE AMERICAN CIVIL LIBERTIES UNION OF NORTHERN CALIFORNIA,<br><br>                Plaintiffs,<br><br>vs.<br><br>ALEX PADILLA, in his official capacity as Secretary of State of the State of California; and William F. ROUSSEAU, in his official capacity as Clerk-Recorder-Assessor-Registrar of Voters for the County of Sonoma,<br><br>                Defendants. | Case No. CPF-17-515931<br><br>**ORDER GRANTING PLAINTIFFS' MOTION FOR WRIT OF MANDATE** |

Plaintiffs challenge the constitutionality of a state statute by which election officials reject mailed ballots bearing voter signatures that officials decide do not match signatures on file. This disenfranchisement occurs without notice to the voter or opportunity to cure or show that the ballot is proper. I GRANT the requested writ of mandate.

### Findings of Fact

In the November 8, 2016 election, well over half of California's 14.6 million voters cast their ballots by mail. Sonoma County resident Peter La Follette tried to be one of those voters. However, unbeknownst to La Follette, county election officials acting under Elections Code §3019(c)(2) refused to count his votes because they decided his signature on his ballot envelope

1

Exhibit 1
Plfs MSJ

did not match a signature they had on file. Officials never told La Follette about their rejection, nor does §3019(c)(2) require them to – or to provide a voter an opportunity to cure or to show that his[1] ballot was proper. La Follette only learned of his disenfranchisement eight months later, when he searched voting records on line.

In the November 2016 election, an estimated 33,000 to 45,000 voters suffered the same fate under Evidence Code §3019(c)(2) that La Follette did. No evidence suggests that a significant number of the vote-by-mail ballots rejected for signature mismatch resulted from voter fraud.

Experts cite several reasons why a person's signature may differ on two occasions: physical disability, injury, a primary language that does not use Roman characters (*e.g.,* many Asian Americans), or simply the passage of time. Many Californians register to vote on computer touch pads, yielding signatures that differ in appearance from those made on paper ballot envelopes.

In contrast to allegedly mismatched signatures, Election Code §3019(f)(1)(a) allows voters who completely fail to sign their ballot envelope to cure that defect, and their mailed ballots are counted if they do. Also, in mail-only elections, election officials are required to "make a reasonable effort to inform a voter" (a) if their "ballot envelope is missing a signature" and (b) how the voter can correct that. (*Id.* at §4006.)

Plaintiffs La Follette and the American Civil Liberties Union of Northern California request that I: (1) hold that Elections Code §3019(c)(2) is facially unconstitutional and that no ballot may be rejected based on a mismatched signature without providing the voter with notice and an opportunity to cure before election results are certified; (2) issue a writ of mandate prohibiting California's secretary of state and Sonoma County's registrar of voters from

---

[1] I use "his," "he" and "him" in this order because La Follette is male.

Exhibit 1
Plfs MSJ

rejecting vote-by-mail ballots for purportedly mismatched signatures without providing the voter with notice and an opportunity to show that the ballot is proper and (3) direct the secretary of state to inform election officials of these rulings.[2]

## Standing

As an initial matter, defendants argue that plaintiffs lack standing to sue them. I disagree. La Follette has both direct and public interest standing. (*Raetzel v. Parks/Bellemont Absentee Election Bd.* (D. Ariz. 1990) 762 F.Supp. 1354, 1355-56; *Save the Plastic Bag Coal. v. City of Manhattan Beach* (2011) 52 Cal.4th 155, 166; *Common Cause v. Bd. of Supers.* (1989) 49 Cal. 3d 432, 439 (writ of mandate to compel officials to comply with election law).) The ACLU has public interest standing as well as taxpayer standing under Code of Civil Procedure §526a. (*Gilbane Bldg. Co. v. Sup. Ct.* (2014) 223 Cal.App.4th 1527, 1531.)

## Conclusions of Law

Plaintiffs assert that Elections Code §3019(c)(2) fails to pass constitutional muster on a number of grounds. I need look no further than the first – the due process clauses of our federal and state constitutions – because voting is a fundamental right, and notice and an opportunity to be heard are fundamental to due process. (*U.S. v. State of Texas* (W.D. Tex. 1966) 252 F.Supp. 234, 250 ("right to vote is one of the fundamental personal rights included within the concept of liberty as protected by the due process clause"); *Peterson v. City of San Diego* (1983) 34 Cal.3d 225, 229 ("right to vote, of course, fundamental"); *Mullane v. Cent. Hanover Bank & Trust Co.* (1950) 339 U.S. 306, 314 (notice and opportunity to contest deprivation of right); *Gray v. Sanders* (1963) 372 U.S. 368, 380 (right to vote includes right to have vote counted).)

---

[2] La Follette and the ACLU style themselves "plaintiffs" and the secretary of state and registrar of voters "defendants." The secretary does the same. The registrar styles the sides "petitioners" and "respondents." Likewise, La Follette and the ACLU refer to this matter as a "motion for writ of mandate" rather than a "petition." No one suggests that these distinctions make a substantive difference. And a writ of mandate is a proper way to challenge a statute's constitutionality or validity. (*Jolicoeur v. Mihaly* (1971) 5 Cal.3d 565, 570 n.2.)

3

Exhibit 1
Plfs MSJ

These due process protections apply to mailed votes just as they do to traditional ballots. No one here contends that vote-by-mail is constitutionally required, but once a state creates such a regime, it "must administer it in accordance with the Constitution." (*Zessar v. Helander* (N.D. Ill. 2006) 2006 WL 642646 at *6.)

Thus, courts across the nation have invalidated statutes like Elections Code §3019(c)(2).

In *Zessar*, a voter challenged Illinois laws by which elections officials rejected mail-in absentee ballots if officials decided the signature on the ballot application did not match the signature in their records. Illinois law was more voter-friendly than California's §3019(c)(2) in at least requiring that voters be notified of ballot rejection after the fact, allowing them to have their votes counted in future elections – something §3019(c)(2) does not do. (*See id.* at *2-3, 6.) Still, a federal court held that the laws violated due process by failing to provide voters a chance "to remedy the loss of vote in *that* election." (*Id.* at *6-7, 10.)[3]

In *Detzner*, Florida election laws similar to those here and in *Zessar* were challenged, but with two differences. Unlike California, Florida law required elections officials to mail new registration applications to voters whose ballots had been rejected for signature mismatches. (*Fla. Democratic Party v. Detzner* (N.D. Fla. 2016) 2016 WL 6090943 at *2.) Like California, Florida treated no-signature ballots more favorably than mismatch ballots, by providing an opportunity to cure before the vote was lost for the current election. (*Id.*) Again, a federal court found the election laws unconstitutional.

In *Raetzel*, voters challenged Arizona election laws that provided no notice or hearing to voters whose absentee ballots were disqualified. A federal court ruled that the laws did "not comport with the constitutional requirements of due process," finding: "Parties whose rights are

---

[3] All emphasis in this order has been added.

Exhibit 1
Plfs MSJ

to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified." (762 F.Supp. at 1358.)

Defendants cite no relevant contrary authority. The primary opinion they rely on – *Lemons v. Bradbury* (9th Cir. 2008) 538 F.3d 1098 – regards signature-gathering for a petition, not vote-by-mail signatures.

Defendants nonetheless claim Elections Code §3019(c)(2) "satisfies due process" with five arguments, all unavailing.

*First,* the secretary of state says the "injury" to citizens deprived of votes in the November 2016 election was "slight" in that "at most only 45,000 were rejected." However, that is the equivalent of a medium-size California city, and the U.S. Supreme Court does not consider voter disenfranchisement a "slight injury": "No right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live." (*Wesberry v. Sanders* (1964) 376 U.S. 1, 17.)

*Second,* the secretary says a written directive "that the voter must sign the envelope in his or her own handwriting" is "*ample notice* of the importance of their signature." However, the constitutional concern here is that, under Elections Code §3019(c)(2), voters are given *no notice* when their signatures are deemed to mismatch.

*Third,* the secretary says "*if they so inquire*, voters are provided with notice regarding whether their signature matched." This "notice" is via the voter's search of an online database that election officials tell him about if he happens to inquire. How a voter is supposed to know to inquire is not indicated. Indeed, a voter could believe his ballots were being counted in election after election without ever learning they were not.

5

Exhibit 1
Plfs MSJ

*Fourth*, the secretary claims "a compelling interest in preventing voter fraud." However, the declaration paragraphs he cites for that claim adduce no actual evidence of voter fraud.

*Fifth*, the Sonoma County voter registrar's main argument is that a "county elections official is required to implement Elections Code section 3019(c), even if she or he believes it is unconstitutional." Finding the statute unconstitutional will relieve officials of that quandary.

### Rulings and Remedies

As requested, I do hold that Elections Code §3019(c)(2) facially violates the due process clauses of our federal and state constitutions. The statute fails to provide for notice that a voter is being disenfranchised and/or an opportunity for the voter to be heard. These are fundamental rights. The parties consume considerable ink disputing what test to use in determining unconstitutionality, but §3019(c)(2) does not pass any test cited.[4]

I also grant the further requested relief: (1) no ballot may be rejected based on a mismatched signature without providing the voter with notice and an opportunity to cure before the election results are certified; (2) plaintiffs are to submit a proposed writ of mandate and (3) the secretary of state is to inform election officials of these rulings. It is argued that these rulings might not provide enough time for election officials to act, but elections are not certified for 30 days, and, as noted above, the state legislature requires similar notice in a similar context – when voter signatures are missing entirely. (Elections Code §§15372(a), 4006.)

Dated: March 5, 2018

_____
Richard B. Ulmer Jr.
Judge of the Superior Court

---

[4] For example, as demonstrated above, the "character and magnitude" of voter injury here far outweighs the "interests put forward by the State as justification for the burden." (*Burdick v. Takushi* (1992) 504 U.S. 428, 434.)

Exhibit 1
Plfs MSJ