UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| FEDERICO FLORES, JR., MARIA GUERRERO, and VICENTE GUERRERO, *Plaintiffs*, | § | |
| v. | § | |
| TEXAS SECRETARY OF STATE, and ARMANDINA MARTINEZ, ALMA GARCIA, ALICIA DOUGHERTY NO. 1, ALICIA DOUGHERTY NO. 2, YOLANDA MARTINEZ, *Defendants*. | § | Case No. 7:18-cv-113 |

**DEFENDANT TEXAS SECRETARY OF STATE'S RESPONSE IN OPPOSITION TO PLAINTIFFS' AMENDED JOINT MOTION FOR SUMMARY JUDGMENT**

Plaintiffs Federico Flores, Maria Guerrero, and Vicente Guerrero filed an amended joint motion for summary judgment on July 29, 2019, contending that State law provides an inadequate process to challenge a County's Early Voting Ballot Board's ("EVBB") decision to reject a mail-in ballot for failing to comply with all requirements to participate in mail-in voting. *See* Dkt. No. 67. For the reasons explained below, the Court should deny their motion.

**ARGUMENT AND AUTHORITIES**

**I. Plaintiffs' Claims Against the Secretary of State Fail Because Plaintiffs Lack Standing.**

The Secretary of State raised detailed standing arguments in its motion for summary judgment. *See* Dkt. No. 65 at 8-12. Plaintiffs' motion does not remedy the deficiencies that result in this lack of standing. For the sake of brevity, the Secretary of

State stands on the briefing contained in its motion and contends that because Plaintiffs lack standing, their motion for summary judgment should be denied.

## II. Plaintiffs Cannot Meet the High Bar To Prove Texas's Mail-in Voting Regime Is Facially Unconstitutional.

Plaintiffs seek a broad facial invalidation of Texas's statutory scheme related to the process for reviewing mail-in voting ballots. *See, e.g.*, Dkt. No. 67 at 2 (arguing that the Court should not uphold Texas's "statutory regime"). But "[a] facial challenge must fail where the statute has a plainly legitimate sweep." *Crawford v. Marion Cty. Elec. Bd.*, 553 U.S. 181, 202 (2008). "When evaluating a neutral, nondiscriminatory regulation of voting procedure, '[the court] must keep in mind that '[a] ruling of unconstitutionality frustrates the intent of the elected representatives of the people.'" *Id.* at 203 (quoting *Ayotte v. Planned Parenthood of Northern New Eng.*, 546 U.S. 320, 329 (2006)). Importantly, "a state statute should not be deemed facially invalid unless it is not readily subject to a narrowing construction by the state courts." *Erznoznik v. Jacksonville*, 422 U.S. 205, 216 (1975).

If the most the evidence showed in this case was that the Starr County EVBB unconstitutionally applied state mail-in voting statutes during the March 2018 Democratic Primary, then Plaintiffs have failed to mount a successful facial challenge. *See United States v. Salerno*, 481 U.S. 739, 745 (1987) (explaining that to succeed on a facial challenge to a statute, "the challenger must establish that no set of circumstances exists under which the Act would be valid.").

But that is not what the evidence demonstrates.

Plaintiffs argue that Texas's absentee voting process violates procedural due process because it does not include a process for absentee voters to cure their ballot after

they have voted and before their ballot is rejected for a signature mismatch. Plaintiffs' exclusive focus on the *post*-voting process fails to account for the entire absentee voting scheme, which provides a constitutionally adequate process for voting absentee in Texas. *See* Dkt. No. 65 at 3-6 (setting forth the process for voting by mail in Texas). As demonstrated by the small percentage of ballots rejected during the 2018 Democratic Primary in the cherry-picked counties identified by Plaintiffs in their prior motion for summary judgment, the risk of an erroneous deprivation of the right to vote is slight under the existing statutory scheme. *See* Dkt. No. 25 at 10. In contrast, the burdens on the State of creating an entirely new process for ensuring the identity of mail-in voters—as Plaintiffs demand—would be immense and would nullify any benefit of mail-in voting.

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). Here, Plaintiffs claim a deprivation of their right to vote. In determining whether the process provided to absentee voters in Texas is constitutionally adequate, Plaintiffs contend that the Court should apply the balancing test articulated in *Mathews v. Eldridge* by weighing: (1) Plaintiffs' interest in participating in the democratic process through voting; (2) the risk of erroneous deprivation of the right to vote under the procedures used by the State; and (3) the State's interest, including any extra administrative or financial burden on the State from requiring additional procedures.[1] *See id.* at 335. In weighing these factors, the Court should keep in mind that "due process

[1] The Secretary of State asserts that *Anderson/Burdick* controls the court's balancing in this case. *See* Dkt. No. 67 at 12-13. That analysis is contained in the Secretary of State's Motion for Summary Judgment. *Id.* To the extent that Plaintiffs argue for a stricter scrutiny under a *Mathews* analysis, that argument lacks merit. However, as noted in the argument that follows, even under a *Mathews* analysis, the Texas statutory scheme for mail-in voting withstands constitutional challenge.

is flexible and calls for such procedural protections as the particular situation demands." *Id.* at 334 (internal alterations, citation and quotation marks omitted).

Texas does not contest that voters have a significant interest in voting. Therefore, if the *Matthews* test were to apply, the facial challenge turns on whether the risk of erroneous deprivation under the current procedures outweighs the burdens that would be imposed on the State to require the types of additional procedures Plaintiffs request.

First, when restrictions on due process rights of voters are reasonable and not a severe burden—as in this case—the State's important regulatory interests are generally sufficient to justify the restriction. *Burdick v. Takushi*, 504 U.S. 428, 434 (1992). Here, Texas's mail-in ballot requirements promote Texas's interests in—

- Preserving the integrity of its election process;
- Maintaining an orderly election process and preventing dilution of votes by those who are not eligible to vote; and,
- Administrative convenience and efficiency.

Texas "indisputably has a compelling interest in preserving the integrity of its election process." *Eu v. San Francisco Cty. Democratic Central Comm.*, 489 U.S. 214, 231 (1989); *see also Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006) (acknowledging "the State's compelling interest in preventing voter fraud"); *Veasey v. Abbott*, 830 F.3d 216, n. 46 (5th Cir. 2016) (Jones, J., concurring in part and dissenting in part) ("[T]he greatest fraud risk exists when unauthorized persons direct an elderly, immobile voter's choices on a mail-in ballot. That the ballots could get lost or stolen from the mail is no more a risk than the loss of a Social Security check."); *Crawford*, 553 U.S. at 225 (Souter, J., dissenting) (noting that "absentee-ballot fraud . . . is a documented problem"); *Griffin v. Roupas*, 385 F.3d 1128, 1131 (7th Cir. 2004) ("Voting fraud . . . is facilitated by absentee voting.").

Plaintiffs have countered that the vote totals in the 2018 Starr County Democratic Primary show that erroneous deprivation occurred, and that the "simple" fix would be a requirement to phone or email the voter to ask if they signed their ballot.

Specifically, Plaintiffs argue that the EVBB rejected "an incredible 13.5%" of mail-in ballots submitted in the March 2018 Democratic Primary. Dkt. No. 58 ¶ 4. Despite Plaintiffs' protestations that they lack any means of challenging rejected ballots, the original plaintiffs in this case, the candidates themselves, filed an election challenge in a state district court and argued that the mail-in ballots rejected by the EVBB cost them their elections. *See Galvan v. Vera*, 2018 WL 4096383 (Tex.App.—San Antonio Aug. 29, 2018) (no pet.). Following a five-day hearing, a district court judge found that "no clear evidence of systemic fraud or error producing protocols was shown." *Id*. at *2. The Fourth Court of Appeals did find that the trial court erred in concluding that a failure to record information on carrier envelopes did not invalidate certain votes. *Id*. at 4. Ultimately, the Fourth Court of Appeals upheld the lower court while pointing out that the fifty votes that should have been invalidated did not alter the outcome of the election. *Id*. at *4.

Of course, the current named Plaintiffs, all registered voters in Starr County, had another recourse: notice and appeal to a county election officer. If a mail-in ballot is rejected, the EVBB presiding judge is required to deliver written notice to the voter no later than the tenth day after election day. Tex. Elec. Code § 87.0431. "If a county election officer . . . determines that a ballot was incorrectly rejected or accepted by the [EVBB] before the time set for convening the canvassing authority, the county election officer may petition a district court for injunctive or other relief as the court determines appropriate." Tex. Elec. Code § 87.127(a). But Plaintiffs did not speak with the county election officer (here, the Starr County Elections Administrator), or even anyone in the Secretary of

State's office, to request that the county officer seek relief regarding their ballots. Dkt. No. 65 at 15-16. Plaintiffs cannot plausibly contend that reaching out to the county election officer would have been fruitless. At least one county election officer—Pamela Ohlendorf, the Caldwell County Election Administrator—successfully sought reconsideration of rejected mail ballots during the March 6, 2018 Republican primary election. *See* Exhibit A, Cause No. 18-O-108, in the 421st Judicial District, Caldwell County, Texas. A similar result may have been possible here. But because Plaintiffs took no steps to utilize the statutory procedures available to them, they cannot now claim a due process violation. *See, e.g.*, *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000) ("If there is a process on the books that appears to provide due process, the plaintiff cannot skip that process and use the federal courts as a means to get back what he wants.").

Given this additional level of review, the most analogous precedent is *Lemons v. Bradbury*, 538 F.3d 1098 (9th Cir. 2008), in which a group of Oregon voters claimed that the state's "procedures for verifying referendum petition signatures violated their equal protection and due process rights." *Id.* at 1100. Those procedures, much like the procedures at issue in this case, required "county election officials [to] verify sampled referendum signatures by determining whether each petition signature matches the signature on the signer's existing voter registration card." *Id.* at 1101. The Ninth Circuit rejected a due process argument similar to the one Plaintiffs raise here. The court noted that the "Secretary's procedures already allow chief petitioners and members of the public to observe the signature verification process and challenge decisions by county elections officials" and that the "value of additional procedural safeguards therefore is negligible, and the burden on plaintiffs' interests from the state's failure to adopt their proposed procedures is slight at most." *Id.* at 1105. Thus, "the administrative burden of the

additional process plaintiffs propose outweighs any marginal benefit that would result from additional procedures." *Id.* The same is true in this case: by allowing the county election officer to bring suit, Texas ensures that procedural safeguards are in place to protect against erroneous signature match determinations. Plaintiffs have not shown that any further process is necessary, especially balanced against the State's interest in ensuring the integrity of its elections.

Moreover, the reasoning supporting Plaintiffs' proposed fix is flawed: a phone call or email would only provide notice, not a fix for the identification issue. The County-level EVBB would still need to verify the voter's identity through some in-person identification or otherwise independently verifiable method. If not through a signature, then the voter would still have to present at a County facility to verify his or her identify, defeating the purpose of mail-in voting.

At bottom, Plaintiffs fail to carry their burden to demonstrate a high risk of erroneous deprivation that would justify invalidating or completely reworking mail-in voting in the State of Texas. They therefore cannot prevail on their due process challenge to the mail-in provisions of the Texas Election Code.[2]

## CONCLUSION

For the foregoing reasons, Plaintiffs' *Amended Joint Motion for Summary Judgment* should be denied.

[2] Plaintiffs have also alleged that the Texas Election Code provisions related to mail-in ballots violate the Equal Protection Clause, but they do not raise this claim in their amended motion for summary judgment. *See* Dkt. No. 67. For the reasons the Secretary of State has already briefed, summary judgment should be granted against the Plaintiffs on this issue. *See* Dkt. No. 65 at 18-19.

**Dated:** August 19, 2019.

**Respectfully submitted.**

**KEN PAXTON**
Attorney General of Texas

**JEFFERY C. MATEER**
First Assistant Attorney General

**DARREN L. MCCARTY**
Deputy Attorney General for Civil Litigation

**THOMAS A. ALBRIGHT**
Chief - General Litigation

*/s/ Michael R. Abrams*
**MICHAEL R. ABRAMS**
Attorney-in-Charge
Southern District ID No. 2513900
Texas Bar No. 24087072
Assistant Attorney General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Telephone: (512) 463-2120
Facsimile: (512) 320-0667
michael.abrams@oag.texas.gov

**Counsel for Defendant Texas Secretary of State**

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was filed electronically with the Court and delivered by CM/ECF on August 19, 2019, to all counsel of record.

*/s/ Michael R. Abrams*
MICHAEL R. ABRAMS
Assistant Attorney General