IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| FEDERICO FLORES, JR., et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | Civil Case No. 7:18-cv-00113 |
| v. | § | |
| | § | |
| TEXAS SECRETARY OF STATE, et al., | § | DECLARATORY AND INJUNCTIVE |
| | § | RELIEF REQUESTED |
| Defendants. | § | |
| | § | |

**PLAINTIFFS' RESPONSE TO
DEFENDANT'S FIRST AMENDED MOTION FOR SUMMARY JUDGMENT**

Plaintiffs FEDERICO FLORES, JR., MARIA GUERRERO, and VICENTE GUERRERO, jointly respond as follows to Defendant Secretary of State's First Amended Motion Summary Judgment (Doc. 65).

**FACTUAL BACKGROUND & ALLEGATIONS**

Given the issues common across the parties' dueling dispositive motions, rather than re-file with the Court exhibits already on file, in the interest of space and to avoid repetition, Plaintiffs hereby incorporate by reference the factual summary and all exhibits contained and made part of their *Amended Motion for Summary Judgment* (Doc. 67), as if set forth fully herein. Plaintiffs provide additional elaboration and/or summary of such facts here as particularly appropriate or helpful with respect to the instant motion.

The original petition in this action was filed by Plaintiffs Leticia Galvan and Martie Garcia Vela in Texas state court on April 11, 2018. Defendant Secretary of State Rolando B. Pablos removed the action to this Court on April 16, 2018. Doc. 1.

1

On November 30, 2018, the Secretary filed his motion for summary judgment (Doc. 22), the Early Voting Ballot Board Defendants filed their motion to dismiss (Doc. 23), and later that same evening, Plaintiffs filed their First Amended Complaint (Doc. 24).  The First Amended Complaint added as plaintiffs four Starr County voters whose mail-in ballots for the March 2018 primaries had been rejected by the Ballot Board.  *See* Doc. 24 at ¶¶ 9-12, 45-51. Plaintiff Amelia Martinez passed away shortly thereafter, and her daughter, Magaly Serna,  filed a Motion to Substitute Party (Doc. 45), which the Court denied in an oral order on March 19, 2019.  The facts as to each remaining voter-Plaintiff are summarized in more detail in Plaintiffs' *Amended Motion for Summary Judgment* (Doc. 67) and, in the interest of space and to avoid repetition, Plaintiffs do not repeat them all here.  The material facts are that each voter attests to signing his or her own application and his or her own carrier envelope, and yet each of their ballots were rejected for perceived signature discrepancy by the EVBB.  *See* Plfs' Am. Joint Mtn. for Summ. J. at 2-3, and Plfs' Exhibits 2 (Depo. of Plaintiff Federico Flores, Jr.); 3 & 4 (Guerrero Plaintiffs' BBM applications and carrier envelopes); 5 (notices to Plaintiffs of rejected ballots); Doc. 65-2 (Depo. of Plaintiff Maria Guerrero); Doc. 65-3 (Depo. of Plaintiff Vicente Guerrero).

Plaintiffs lodge three basic legal arguments against the ballot by mail review and rejection procedure in Texas.  In Count 1, Plaintiffs argue that the Texas procedures permitting rejection of a mail ballot for signature mismatch without affording an opportunity to cure a perceived deficiency violates due process and the right to vote.  Plaintiffs seek a declaration that Texas's procedure is illegal, and a permanent injunction against all Defendants.  Prayer, Sec. Am. Compl. (item 1.).  Moreover, in addition to declaratory relief (as to all claims), Plaintiffs pray specifically for:

> 2. A permanent injunction against the State of Texas, by and through Secretary Pablos or as otherwise deemed appropriate by this Court, and against the Starr County Early Voting Ballot Board and each of its members, from enforcement of the statutory procedure permitting mail ballot rejection for perceived

> signature mismatch without affording appropriate procedural due process permitting voters a method of seeking to cure any deficiency that may be cured to ensure their ballot is counted;
>
> 3. A permanent injunction or other appropriate order implementing constitutionally sufficient procedures to permit Texas voters whose mail ballots are slated to be rejected for perceived signature mismatch the opportunity to affirm their identity or otherwise to cure perceived deficiencies regarding their mail-in ballots so that they can be counted in the relevant election;
>
> 4. A permanent injunction or other appropriate order directing the Secretary of State to provide notice of any procedures ordered by this Court to the public, including via the Secretary's official website, and to the appropriate election administrator or other relevant election official of each county in Texas;
>
> 5. Any further orders necessary or expedient in effectuating the relief sought herein;
>
> 6. Nominal damages for the violation of Plaintiffs' constitutional rights;
>
> 7. Reasonable and necessary attorneys' fees, costs, and expenses pursuant to 42 U.S.C. § 1988; and
>
> 8. All other relief to which Plaintiffs may be entitled.

*Prayer*, Sec. Am. Compl. (Doc. 58).

In Count 2, Plaintiffs allege an equal protection challenge. However, Plaintiffs did not argue any equal protection claim in their amended motion for summary judgment and are no longer pursuing that claim.[3]

### STANDARD OF REVIEW

Plaintiffs incorporate the standard of review as stated on page 11-12 of their *Amended Motion for Summary Judgment*.

### ARGUMENT

The Secretary presses three arguments in the First Amended Motion for Summary Judgment (Doc. 65): *first*, that the Secretary is not a proper party; *second*, that "Plaintiffs lack standing

---

[3] Plaintiffs' First Amended Complaint also contained Count 3, a variation of the equal protection challenge, alleging that "the manner in which the Starr County EVBB reviewed carrier envelopes for acceptance in this election—whereby each individual member made unilateral decisions to accept or reject—violates equal protection." That count was omitted from the Second Amended Complaint.

3

because their injuries would not be redressed by an injunction"; and, *lastly*, that the challenged laws are valid on the merits. None of these arguments are availing. Plaintiffs respond in turn.

**I.    As Chief Election Officer of the State, the Secretary of State is a Proper Party**

The Secretary claims that, as he does not directly appoint local election officials or personally handle vote-by-mail, he is not a proper party to this suit. *Secretary's Amended MSJ* at 8-11. This argument is foreclosed by the Fifth Circuit's decision in *OCA-Greater Houston v. Texas*, which makes plain that in a facial challenge to a Texas election statute, a plaintiff establishing injury-in-fact also establishes causation and redressability as to the Secretary of State, as the statutorily-designated chief election officer. 867 F.3d 604, 613-14 (5th Cir. 2017). Indeed, the Secretary's argument here is directly contrary to his own words and actions in response to other litigation showing that he has willingly and proactively exercised the precise authority with respect to local election officials that Plaintiffs seek to order him to exercise in this case. Not only does the Secretary promulgate training, guidance, and forms to local election officials, but the Secretary has already previously required local election officials to enforce or not enforce specific provisions of the code when faced with a court order.

Under the Texas Election Code, the Secretary is the "Chief Election Officer" of the state. Tex. Elec. Code § 31.001. Consequently, he is charged with obtaining and maintaining uniformity in the application, operation, and interpretation of the Election Code and with distributing comprehensive written directives and instructions to state and local authorities who administer election laws. *Id.*

Courts have repeatedly recognized the Secretary's role as chief election officer and have required him to exercise his statutory authority over local election officials. The circumstances in *OCA-Greater Houston* were materially indistinguishable from the facts at bar, in that the injury arose from the actions of local election officials who, applying state law, refused to permit

4

Mallika Das (the voter) to use her son as her translator at the poll. 867 F.3d at 608. Just as here, the ensuing lawsuit challenged a provision of the Election Code and plaintiffs sued the State and the Secretary of State. *Id.* at 607. The Fifth Circuit held that the Secretary was the appropriate party—despite the fact that the challenged law was applied by local election officials at the polls—because of his role as the "Chief Election Officer." On remand, the District Court for the Western District of Texas issued a revised injunction, consistent with the Fifth Circuit's mandate, enjoining the Secretary "from enforcing" the challenged provisions of the Election Code. *OCA-Greater Houston v. State of Texas*, No. 1:15-cv-00679-RP at p. 8 (W.D. Tex. May 15, 2018) (Order attached as **Exhibit 9**). The order further required the State and the Secretary to "implement a remedial plan," including revising and training instructional manuals and publishing notices to local officials, as follows:

1) Defendants shall revise training and instructional materials for state and county election officials to remove language that reflects the substance of Sections 61.033 and 64.0321. Specifically, such training and instructional materials shall no longer state that (a) an interpreter must be registered to vote in the same county as the voter; or (b) that assisting a voter is limited to conduct that occurs while the person is in the presence of the voter's ballot or carrier envelope. This component of the Court's injunction shall apply only to training or instructional materials published more than six weeks after the date of this order.

2) Defendants shall distribute notice to all county elections departments clarifying that they are not to enforce Sections 61.033 and 64.0321. The notice should explicitly explain that an eligible voter is entitled to receive assistance from a person of their choosing, even if the person is not a registered voter, is registered to vote in a different county, is not of age to vote, or is not a United States citizen, so long as that person is eligible to provide assistance under Section 208. The notice should also explain that an eligible voter is entitled to receive assistance from a person of their choosing regardless of whether they identify that person as their "assistor" or "interpreter." The notice may be distributed through any means, electronic or otherwise, reasonably calculated to inform county election officials that they are not to enforce Sections 61.033 or 64.0321. Defendants shall issue this notice no later than three months after the date of this order.

**Exhibit 9** at 8.  Just like the "training and instructional materials" the Secretary was ordered to revise in OCA, the Secretary already publishes a guide for the Early Voting Ballot Boards across the state, **Exhibit 12**,

Likewise, in *Veasey v. Abbott*, District Judge Nelva Gonzalez Ramos of the Southern District of Texas recognized that the various state defendants, including the Secretary, had the ability to directly exercise control over and compliance of local officials with its order. **Exhibit 10** (*Order Regarding Agreed Interim Plan for Elections*, entered in No. 2:13-cv-00193 (Aug. 10, 2016).  Among other things, the Secretary, Governor, and TXDOT Director were tasked with ensuring local election officials complied with the court's interim order in utilizing specific documents regarding voter impediments, making oral translations, accepting specific identification documents, and training local officials.  *Id.* at 1-4.  The court recognized the extensive control the Secretary had over local election officials, going so far as requiring him and the other defendants to even curtail activity of poll watchers. *Id.* at 3 (requiring that the defendants to ensure that poll watchers did not "communicate in any manner with any voter concerning the procedures outlined in this Order, presentation of identification, or the validity of a voter's impediment to obtain identification.").

In his response to the *Veasey* court's order, the Secretary and other state defendants submitted a plan detailing exactly how the Secretary would exercise his duties as chief election officer and ensure compliance of local election officials.  In their plan, the Secretary stated, "as the State's chief election officer," the Secretary "is committed to providing effective education to election officials on how to implement the interim remedy order." **Exhibit 11 at 7**. "Indeed"- according to the Secretary himself—"the Secretary of State is required by statute to adopt standards of training in election law and procedure for election judges, to develop materials for a standardized curriculum for training election judges, and to distribute those materials as

6

necessary." *Id* (citing Tex. Elec. Code § 32.111(a)-(c)). Just as the *Veasey* court, the Secretary recognized that he had a duty inform, train, issue guidance and forms to, and ensure compliance of local election officials with the court's order. *Id.* at 12-15.

In his Amended Motion for Summary Judgment, the Secretary now asks the Court to ignore his own words, his own actions, and clear judicial precedent, citing two inapposite cases dealing not with the Secretary as the Chief Election Officer but regarding traceability to the Governor on completely distinguishable facts. In *Does #1-7 v. Abbot,* the Secretary relies on a court that found the lack of traceability in a suit against the Governor of Texas "*based solely on an officials general authority to enforce a state's laws*." 345 F. Supp. 3d 763, 773 (N.D. Tex. 2018) (emphasis added) (cited in *Secretary's Amended MSJ* at 10). Unsurprisingly, the court found there was no causal connection for the purposes of traceability, when the Governor had not taken any action, threatened any action, and the statute did not have any specific provision giving him an enforcement role. *Does #1-7,* 345 F. Supp. 3d at 773. Importantly, however, the court determined that the Director of public safety *was* a "proper party to this suit" as the statute delegated him enforcement and implementation roles. *Id.* at 733, n. 4. This authority, upon which he relies to assert that Plaintiffs' injuries are not traceable to him, actually stands for the exact opposite proposition–state officials with statutory implementation roles are proper parties to a suit concerning that statute.

Likewise, the Secretary's reliance on *Inclusive Communities Project, Inc. v. Abbott*, 3:17-CV-0440-D, 2018 WL 2415034, at *5 (N.D. Tex. May 29, 2018), is completely inapposite. Again, in a suit against the Governor, the court found that in the absence of enforcement, a threat of enforcement, or "'definite responsibilities'" related to[] the statute in question," the Governor's "general duty to uphold the laws" will not sustain a finding of traceability. *Id.* at *6.

7

Thus, the Election Code and binding Fifth Circuit precedent , hold that the Secretary has the authority to ensure local election officials' compliance with the Code and with the Court's order. Plaintiffs here bring a facial challenge to the statute, just like the Plaintiff in *OCA-Greater Houston*.

## II. Plaintiffs Have Standing.

The Secretary argues that "Plaintiffs also have failed to allege a case or controversy between them and the Secretary of State" on the alleged ground that "they have no viable claim for prospective injunctive relief." *Secretary's Amended MSJ* at 11-12. This argument is unavailing for two reasons. First, it completely fails to account for Plaintiffs' claims for declaratory relief and nominal damages based on their past, realized injury from the rejection of their ballots in 2018. Second, Plaintiffs' claims for injunctive relief also remain viable given that this is an election case and the statute at issue will continue to apply to others unless and until it is enjoined.

### a. Standing for declaratory judgment and nominal damages

Plaintiffs all undeniably have demonstrated injury in fact for Article III standing. Their ballots were rejected for perceived signature mismatch, and they were not afforded a cure opportunity, establishing injury from the alleged due process violation. Mr. Flores and the Guerreros, therefore, have standing to prosecute these claims at least to the extent they seek nominal damages and declaratory relief for this actual and past violation of fundamental rights— the denial of their procedural due process. *See Familias Unidas v. Briscoe*, 619 F.2d 391, 402 (5th Cir. 1980) (affirming declaratory judgment in favor of a plaintiff who establishes past infringement of constitutional rights even without actual damages). The injury-in-fact is the denial of constitutionally sufficient process, regardless of whether such process would have ultimately changed the decision to reject their ballots. *See* Doc. 43 at 6.

Consequently, it is established that these Plaintiffs have standing to prosecute claims arising from this *past*, *actual*, *realized* constitutional injury, including, at a minimum, claims for a declaratory judgment that the current statutes/procedures are unconstitutional, and nominal damages, as appropriate. *Familias Unidas*, 619 F.2d at 402.

### b. Standing for prospective injunctive relief

A Plaintiff's stated intent or desire to engage in the requisite activity in the future is only relevant to the extent it is necessary to support prospective relief; here, the Plaintiffs' requested injunctions. The Secretary asserts that because the Plaintiffs "affirmatively disclaimed an intent to vote by mail in future elections" in their depositions, they lack standing to seek an injunction. *Secretary's Amended MSJ* at 12. The Secretary conspicuously avoids citing any testimony, however, and the testimony—the reasons each of these elderly voters actually gave when they disclaimed intent to vote by mail in the future—is relevant.

All three Plaintiffs couched their statements concerning future voting in terms of a direct response to their rights being violated by the Secretary's unconstitutional acts and the difficulty this litigation has caused for them. In the case of Plaintiff Flores, while he did state he no longer desires to vote-by mail, this completely ignores the context and reasoning of why he is scared to do so. Shortly after saying this, Plaintiff Flores explained his reasoning: "This way, I avoid more issues like this, more problems. That way they accept -- they accept me. Then I'll be taking my card to vote." Flores Dep. 20:21-25 Later, Flores even discusses leaving the country if the Secretary continued to infringe on his constitutional rights. Flores Dep. 19:8-13 ("I mean, they should let me vote. If not, I'll just go back to Mexico like La India Maria."). Likewise, Plaintiffs Maria and Vicente Guerrero stated directly that their disinterest in voting by mail in the future is based on the rejection of their valid signatures. M. Guerrero Dep. 19:19-22; V. Guerrero Dep. 19:13-16. In effect, the Secretary has so egregiously violated the Plaintiffs rights, that the they

9

are simply too skeptical to believe that their constitutional right to vote would be respected in the future.

There is no question that without injunctive relief, the constitutionally insufficient procedures will allow more Texas mail ballots to be rejected without due process in future elections. The fact that these Plaintiffs have been so angered and discouraged by the deficient procedures at issue to the point that they disclaimed intent to vote by mail in the future should not be able to be used by the State to avoid an injunction. This is all the more true given that voting by mail could become the *only* manner in which these Plaintiffs could exercise the franchise in a future election, should their ability to travel deteriorate further. Faced with the prospect of not voting at all, or voting by mail—particularly after this Court has ordered constitutionally sufficient procedures—the Secretary cannot establish that these voters would not choose to mail in a ballot.

Moreover, the fact that this is an election case involving a constitutionally deficient statutory procedure, applicable every election to every mail-ballot voter, distinguishes it from cases like Lyons. The Supreme Court, for example, has long recognized relaxed justiciability principles in election cases, repeatedly refusing to find cases moot, despite the lack of evidence of future application of the challenged law to the plaintiff, because the statute will undoubtedly remain on the books and apply to others. In fact, despite the normal rule that the "capable of repetition" exception to mootness only applies where the same party alleges intent to engage in the same activity, the "[Supreme] Court has not … dismissed an election case as moot where the plaintiff failed to allege that he would be governed by the same flawed law in the next election." *Kucinich v. Texas Democratic Party*, 563 F.3d 161, 164 (5th Cir. 2009) (collecting cases); *see also Ctr. for Individual Freedom v. Carmouche*, 449 F.3d 655, 662 (5th Cir. 2006) ("Thus, even if it were doubtful that the Center would again attempt to engage in election-related speech in

10

Louisiana, precedent suggests that this case is not moot, because other individuals certainly will be affected by the continuing existence of the CFDA.").

### III. The Challenged Statutes and Procedures Violate the Constitution.

Given that Plaintiffs have filed their own motion for summary judgment arguing that the challenges statutes and procedures violate the Constitution, they incorporate that briefing in the instant response, including the forthcoming briefing in Plaintiffs' reply in support of their own motion. Here, Plaintiffs respond to certain points made in the Secretary's argument.

#### a. Defendants invoke the wrong test for constitutionality

The Secretary desperately flees from the *Mathews* test, arguing that the *Anderson/Burdick* balancing analysis applies. *Secretary's Amended MSJ* at 12-14. Plaintiffs demonstrate below why the *Mathews* test inarguably applies to procedural due process claims such as the Plaintiffs' claim here. But even if *Anderson/Burdick* applied, it would not change the result.

The Secretary makes the general claim that state election laws are reviewed under the *Anderson/Burdick* balancing test. *Secretary's Amended MSJ* at 12-14. This is true when a plaintiff challenges an election procedure as a burden on the right to vote generally and/or the right to associate for political purposes under the First Amendment, such as ballot access restrictions that were at issue in *Anderson v. Celebrezze*, 460 U.S. 780 (1983) (would-be candidate challenging state deadline for filing application for place on ballot), and *Burdick v. Takushi*, 504 U.S. 428 (1992) (Hawaii voter challenging state prohibition on write-in voting as violation of his rights of expression and association under First and Fourteenth Amendments), but those cases did not involve *procedural due process* (PDP) challenges to voting procedures. Allegations of too little process are distinct from claims that an election law violates a substantive right such as the right of association or right to vote; accordingly, (PDP) claims are analyzed under a different test established in *Mathews v. Eldridge*, 424 U.S. 319 (1976). *See*

11

*Plfs' Amended MSJ* at 12. The Fifth Circuit has recognized that the *Mathews* analysis applies to PDP claims in various substantive contexts, *see, e.g.*, *Swindle v. Livingston Parish Sch. Bd.*, 655 F.3d 386 (5th Cir. 2011) (PDP challenge regarding dismissal of student from public school), including PDP challenges to state election laws, as in *Wilson v. Birnberg*, 667 F.3d 591, 601 (5th Cir. 2012). Notably, the claim in *Wilson* was similar to that in *Anderson*, in that both plaintiffs were candidates challenging state restrictions related to applying for a place on the ballot. Although *Wilson* post-dates *Anderson*, the Fifth Circuit applied *Mathews*, because the plaintiff's challenge sounded in PDP, not the substantive associational rights of candidates as in *Anderson*. Plaintiffs' PDP claims here are analyzed under the test recognized in *Mathews*/*Wilson*. This is why numerous other cases addressing PDP claims as to deficient mail-ballot rejection procedures also apply the *Mathews* analysis, and properly explain the facial-challenge analysis in a case of this nature. *Martin v. Kemp*, 341 F. Supp. 3d 1326 (N.D. Ga. Oct. 24, 2018, appeal dismissed sub nom. *Martin v. Sec'y of State of Georgia*, 18-14503-GG, 2018 WL 7139247 (11th Cir. Dec. 11, 2018); *Saucedo v. Gardner*, 335 F. Supp. 3d 202, 214 (D.N.H. Aug. 14, 2018); *Zessar v. Helander*, 05-C-1917, 2006 WL 642646, at *7 (N.D. Ill. Mar. 13, 2006).

Nonetheless, application of *Anderson*/*Burdick* would not change the result. The Secretary fails to acknowledge that in *Florida Democratic Party v. Detzner*, where the court found that even when applying the *Anderson/Burdick* even a "slight [] burden" was unconstitutional. 4:16CV607-MW/CAS, 2016 WL 6090943, at *6 (N.D. Fla. Oct. 16, 2016) (granting plaintiff preliminary injunction against the state of Florida and its statutory scheme regarding mismatched-signature ballots).

**b. Regarding the Secretary's claim that the "burden on voting rights is minimal"**

First, the Secretary's factual assertion that "mail-in voters are given notice that their genuine and accurate signatures are required," *Secretary's First Amended MSJ* at 14, is

overstated. The Secretary refers here merely to the statute itself, requiring that "A ballot may be accepted only if…(2) neither the voter's signature on the ballot application nor the signature on the carrier envelope certificate is determined to have been executed by a person other than the voter, unless signed by a witness." Tex. Elec. Code § 87.041(b)(2). This argument presumes that if a voter simply has sufficient notice of the fact that signatures will be compared before a ballot is accepted, she can make sure and sign the same way she signed on the application. Even if a voter recalls how she signed the application (or retained a copy of the application), this simply avoids the fact that voters' signatures vary for a multitude of reasons, as attested by Dr. Mohammed, some of which are outside the voter's control. See *Saucedo*, 2018 WL 3862704, *12 (relying on Dr. Mohammed's testimony regarding "[t]he natural variations in a person's handwriting—many of which are unintentional or uncontrollable, like mental or physical condition"). But even if notice were relevant—on the State's apparent theory that every voter is capable of consciously reproducing a signature that is sufficiently similar to a signature she provided weeks or months earlier, to the satisfaction of an untrained Ballot Board reviewer—the statute's existence alone would be insufficient. The New Hampshire statutes examined in *Saucedo* were actually amended before the court's ruling to mandate express warnings, both on the application and the ballot envelope, that the ballot may be rejected if the signatures do not match. *Saucedo*, 2018 WL 3862704, *2. The court considered this fact, and recognized that it did not obviate the need for additional procedures. *Id.* at *12. In any event, neither the application to vote by mail nor the carrier envelope used in Texas provides such a warning to the voter. *See, e.g.*, **Plfs' Exhibits 2-4** (applications and carrier envelopes from voter plaintiffs).

    **c. Regarding the Secretary's argument that the "magnitude of the injury is relatively slight"**

As with the previous section, this section must begin with a correction, or at least a clarification, of the misimpression invited by the Secretary's motion. The Secretary refers to the

13

state-court election contest brought by Plaintiffs Galvan and Garcia Vela at pages 15-16, and states that the state courts "rejected challenges to the results of the election that included a challenge concerning mail-in ballots." Notably, the Secretary does not actually assert that any constitutional claims were raised or addressed in the election contest. Nor could he, because Texas courts lack jurisdiction to consider constitutional claims in an election contest. *See* Plfs. Resp. to EVBB Defs' Mtn. to Dismiss at 7. Plaintiffs filed their constitutional claims in a separate lawsuit—this lawsuit—that the Secretary then removed to this Court.

Moving beyond this, the Secretary's argument seems to be that Plaintiffs whose votes were rejected and not counted, even though they signed their own applications and carrier envelopes, would only have a cognizable claim if a sufficient number of additional voters had also been disenfranchised in proportion to total voters. This argument is misplaced and does not undermine plaintiffs' PDP claim here. Even if only a small number of voters typically have ballots rejected for perceived signature mismatch, under the *Mathews* analysis, this only further reduces the burden imposed on election officials by means of affording sufficient process to validate those ballots, while at the same time providing a tangible, and fundamental, benefit to the affected voters who otherwise were disenfranchised. This is the precise analysis by other courts rejecting this very argument. *Saucedo*, 2018 WL 3862704, at *13; *Zessar*, 2006 WL 642646, at *9.

**IV.    Plaintiffs did not have a process available to cure their ballots.**

The Secretary claims that the Plaintiffs already have a means for challenging rejected ballots, but merely failed to exercise "the process available to them." *Secretary's Amended MSJ* at 16. As already noted by the Plaintiffs, what the secretary refers to is Tex. Elec. Code § 87.127. This is not a process available to voters to challenge the rejection of their ballot; rather, this allows the county election officer a very limited process for challenging an EVBB

14

determination, but only with court process and, in many elections, only after securing permission from the county chair of *all* political parties. Tex. Elec. Code § 87.127.[6] According to the Secretary, the ability to "raise[] their concerns" and informally ask the Starr County Elections Administrator for a favor he has no obligation to honor constitutes an available process.

But even if the relevant election officials acceded to a voter's request, and even if that officer secured approval of funds for litigation, found a lawyer who was available to file an emergency case before the canvas, and challenged the rejection of the ballot, it does not change the fact that, without ordering constitutionally sufficient process, the court's review would simply be to inquire whether the EVBB "incorrectly rejected or accepted" a ballot according to the statutes as they exist now. And under § 87.041, it is up to the discretion of the ballot board to eyeball signatures and reject a ballot if they determine that the signatures appear to be a mismatch.

## PRAYER

Plaintiffs respectfully request that the Court deny the Secretary's motion for summary judgment in its entirety. Plaintiffs further request any additional relief to which they may be justly entitled.

Respectfully submitted,

---

[6] The section in question states in full:

> (a) If a county election officer, as defined by Section 31.091, determines a ballot was incorrectly rejected or accepted by the early voting ballot board before the time set for convening the canvassing authority, the county election officer may petition a district court for injunctive or other relief as the court determines appropriate.
>
> (b) In an election ordered by the governor or by a county judge, the county election officer must confer with and establish the agreement of the county chair of each political party before petitioning the district court.

Tex. Elec. Code § 87.127.

15

                                                                                           _____

Jerad Wayne Najvar
Tex. Bar No. 24068079
S.D. Tex. No. 1155651
jerad@najvarlaw.com
2180 North Loop West, Suite 255
Houston, TX 77018
281.404.4696 phone
281.582.4138 fax
*Lead Counsel for Plaintiffs*

*Of counsel:*
NAJVAR LAW FIRM, PLLC
Austin M.B. Whatley
Tex. Bar No. 24104681
2180 North Loop West, Ste. 255
Houston, TX 77018
281.410.2003 phone
austin@najvarlaw.com

**Certificate of Service**

The undersigned counsel hereby certifies that on August 19, 2019, the foregoing document, along with any exhibits and proposed order, was served on the following counsel of record in this matter by means of the court's CM/ECF system:

Mr. Eric Hudson
Mr. H. Carl Myers
PO Box 12548, Capitol Station
Austin, TX 78711
*Counsel for Defendant Pablos*

Mr. Martin Golando
405 N. Saint Mary's, Suite 700
San Antonio, TX 78205
*Counsel for ballot board Defendants*

                                                      /s/ Jerad Najvar
                                                      Jerad Najvar