IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| FEDERICO FLORES, JR., et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | Civil Case No. 7:18-cv-00113 |
| v. | § | |
| | § | |
| TEXAS SECRETARY OF STATE, et al., | § | DECLARATORY AND INJUNCTIVE |
| | § | RELIEF REQUESTED |
| Defendants. | § | |
| | § | |

**PLAINTIFFS' RESPONSE TO BALLOT BOARD DEFENDANTS'
"MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT AND
MOTION FOR SUMMARY JUDGMENT"**

Plaintiffs FEDERICO FLORES, MARIA GUERRERO, and VICENTE GUERRERO, jointly respond to the Rule 12(b)(6) motion to dismiss and motion for summary judgment filed by the Early Voting Ballot Board Defendants as follows.

FACTUAL BACKGROUND & ALLEGATIONS

Given the issues common across the parties' dueling dispositive motions, rather than re-file with the Court exhibits already on file, in the interest of space and to avoid repetition, Plaintiffs hereby incorporate by reference the factual summary and all exhibits contained and made part of their Amended Joint Motion for Summary Judgment (Doc. 67), as if set forth fully herein. Plaintiffs provide additional elaboration and/or summary of such facts here as particularly appropriate or helpful with respect to the instant motion.

The original petition in this action was filed by Plaintiffs Leticia Galvan and Martie Garcia Vela in Texas state court on April 11, 2018. Defendant Secretary of State removed the action to this Court on April 16, 2018. Doc. 1.

1

The Second Amended Complaint was filed on July 9, 2019 (Doc. 58), as requested by the Court, to reflect the Court's dismissal of the two original plaintiffs (Galvan and Garcia Vela),[1] and the denial of Magaly Serna's motion for substitution in place of deceased Plaintiff Amelia Martinez.[2] On July 29, 2019, the Secretary filed his First Amended Motion for Summary Judgment (Doc. 65), the same day Early Voting Ballot Board Defendants filed their Motion to Dismiss and Motion for Summary Judgment (Doc. 66). The facts as to each remaining voter are summarized in more detail in Plaintiffs' Amended Joint Motion for Summary Judgment (Doc. 67) and, in the interest of space and to avoid repetition, Plaintiffs do not repeat them all here. The material facts are that each voter attests to signing his or her own application and his or her own carrier envelope, and yet each of their ballots were rejected for perceived signature discrepancy by the EVBB. See Plfs' First Am. Joint Mtn. for Summ. J. at 2-3, and Plfs' Exhibits attached thereto.

Plaintiffs lodge three basic legal arguments against the ballot by mail review and rejection procedure in Texas. In Count 1, Plaintiffs argue that the Texas procedures permitting rejection of a mail ballot for signature mismatch without affording an opportunity to cure a perceived deficiency violates due process and the right to vote. Plaintiffs seek a declaration that Texas's procedure is illegal, and a permanent injunction against all Defendants. Specifically, in addition to declaratory relief (as to all claims) and other relief as noted further below, Plaintiffs pray for:

> 2. A permanent injunction against the State of Texas, by and through Secretary Pablos or as otherwise deemed appropriate by this Court, <u>and against the Starr County Early Voting Ballot Board and each of its members</u>, from enforcement of the statutory procedure permitting mail ballot rejection for perceived signature mismatch without affording appropriate procedural due process

---

[1] March 19, 2019 Hearing Trans. 5:20-21.

[2] *Id.* at 6:22-23.

> permitting voters a method of seeking to cure any deficiency that may be cured to ensure their ballot is counted;

*Prayer*, Sec. Am. Compl. (Doc. 58) (emphasis added).

In Count 2, Plaintiffs allege an equal protection challenge. However, Plaintiffs did not argue any equal protection claim in their amended motion for summary judgment and are no longer pursuing that claim.[3]

### STANDARD OF REVIEW – SUMMARY JUDGMENT

Defendants Martinez, Garcia, Dougherty No. 1, Dougherty No. 2, and Martinez style their motion as a "Motion to Dismiss Plaintiffs' Second Amended Complaint and Motion for Summary Judgment." However, Defendants rely on matters outside the pleadings. "A motion to dismiss is converted to a motion for summary judgment when 'matters outside of the pleadings are presented to and not excluded by the court.'" Fed . R. Civ. P. 12(d); *In re Deepwater Horizon*, 761 Fed. Appx. 311, 313 (5th Cir. 2019). "When such a conversion takes place, the district court must provide the plaintiffs 'a reasonable opportunity to present all the material that is pertinent to the motion.'" Fed. R. Civ. P. 12(d); *In re Deepwater Horizon*, 761 Fed. Appx. at 313. "[F]ormal notice from the court is not required when the court 'accept[s] for consideration on the motion matters outside the pleadings,' as the introduction of such materials provides sufficient notice to the plaintiff that the court could treat the motion to dismiss as one for summary judgment." Fed. R. Civ. P. 12(d); *In re Deepwater Horizon*, 761 Fed. Appx. at 313.

Here, Defendants expressly rely on matters outside of the pleadings. Specifically, Defendants rely extensively upon statements made during Plaintiffs' depositions. *See, e.g.* Defendants' "Motion to Dismiss Plaintiffs' Second Amended Complaint and Motion for Summary Judgment" at 5-7, 12-13 (hereinafter, "EVBB MTD/MSJ"). Accordingly, their motion

---

[3] Plaintiffs' First Amended Complaint also contained Count 3, a variation of the equal protection challenge, alleging that "the manner in which the Starr County EVBB reviewed carrier envelopes for acceptance in this election—whereby each individual member made unilateral decisions to accept or reject—violates equal protection." That count was omitted from the Second Amended Complaint.

3

should be treated as a motion for summary judgment. *In re Deepwater Horizon*, 761 Fed. Appx. at 313. As their motion is in actuality a motion for summary judgment, Plaintiffs incorporate the standard of review as stated on page 12 of their *Amended Joint Motion for Summary Judgment* (Doc. 67).

## ARGUMENT

In their motion, Defendants' assertions boil down to four basic arguments: (1) that Plaintiffs have not asserted facts to substantiate its equal protection claim against the Defendants; (2) the Plaintiffs lack standing as the rejection of their ballots did not create an actual injury; (3) that the Plaintiffs' reluctance to vote by mail in the future removes their standing for all claims; and (4) summary judgment is appropriate as the Plaintiffs' signatures did not match.[4]

**I.     The Plaintiffs Have Valid Due-Process Claims and Consequently have Standing**

Defendants assert that Plaintiffs lack standing as their mail-in ballots were "illegally harvested" and they have expressed that they don't seek to vote-by-mail in future elections. EVBB MTD/MSJ 5-7. However, Defendants argument fails to appropriately address what is actually at issue – the Plaintiffs were entitled to due process. Rather than addressing Plaintiffs' due process arguments, the Defendants' merely focus on what a possible (and unproven) allegation may have resulted in and then conflates an argument solely against future injunctive relief as an argument against the totality of Plaintiffs' standing.

   **a. Whether Plaintiffs' Votes Were Illegally Harvested is Irrelevant to a Standing Analysis Regarding Their Procedural Due Process Claim.**

The EVBB argues that the three Plaintiffs lack standing, claiming their votes were "illegally harvested." EVBB MTD/MSJ at 5-7. Similar to their arguments in their original motion to dismiss, Defendants are in effect arguing that Plaintiffs lack past injury for purposes of

---

[4] Plaintiffs do not dispute that Defendants are entitled to qualified immunity in their personal capacities, but they may not assert it for their official capacities. EVBB MTD/MSJ at 8-11.

standing. *See OCA-Greater Houston v. Texas*, 867 F.3d 604, 609 (5th Cir. 2017) (reciting the three standing elements of injury in fact, causal connection between the injury and the conduct complained of, and traceability) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992)). In short, Defendants argue that, *assuming* Plaintiffs votes would have been otherwise cast out as illegal votes, they could not have suffered an injury from the Defendants' actions. This argument is unavailing. First, black letter law holds that cognizable injury from deficient process does not turn on whether the plaintiff is able to ultimately prove entitlement to the benefit at issue (here, whether the ballot should have *ultimately* counted). Second, the claim that any of these ballots were "illegally harvested" is a misleading and conclusory concoction of the EVBB Defendants that is not supported by the record.

### i. Procedural due process injury does not turn on the ultimate merits of the benefit sought.

Defendants' argument misunderstands the harm that a due process injury is meant to address: A plaintiff's injury derives from a lack of *process*, not the existence a certain *result*. *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) ("In procedural due process claims, the deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest without due process of law."). Supreme Court and Fifth Circuit precedent make clear that, even if Defendants' conclusory assertions regarding ballot harvesting as true, they are entirely irrelevant:

> Because the right to procedural due process is "absolute" in the sense that it does not depend upon the merits of a claimant's substantive assertions, and because of the importance to organized society that procedural due process be observed, we believe that the denial of procedural due process should be actionable for nominal damages without proof of actual injury.

*Carey v. Piphus*, 435 U.S. 247, 266 (1978) (internal citations omitted); *Archbold-Garrett v. New Orleans City*, 893 F.3d 318, 322 (5th Cir. 2018). Plaintiffs have asserted due process claims regarding the process by which the Defendants denied them their constitutional right to vote.

Whether they would ultimately have had their votes counted has no bearing on the court's analysis. *McClelland v. Massinga*, 786 F.2d 1205, 1210 (4th Cir. 1986) ("It is the teaching of *Carey* that the right to procedural due process is 'absolute in the sense that it does not depend upon the merits of a claimant's substantive assertions, and because of the importance to organized society that procedural due process be observed.'") (some internal quotations omitted); *Raetzel v. Parks/Bellemont Absentee Election Bd.*, 762 F. Supp. 1354, 1356 (D. Ariz. 1990).

### ii. The record does not reflect "harvesting."

The Ballot Board Defendants' characterization of the facts and the law as to alleged "harvesting" is misleading. Defendants completely ignore the fact that Plaintiffs are exactly the type of voters who qualify for assistance and fails to show that their votes were "illegally harvested."

As to Plaintiff Flores, Defendants write:

> Generally, a mail-in ballot may not be counted if the ballot was in possession of [a] person other than the voter. Tex. Elec. Code § 86.006(g). … If a mail-in ballot is in the possession of another, then it may not be counted. Federico Flores' ballot was harvested by a third-party. His vote cannot count.

EVBB MTD/MSJ at 5-6.

What the Defendants omit from their misleading summary is that the statute specifically allows "a voter with a disability who is physically unable to deposit the ballot and carrier envelope in the mail" to select a person "to assist the voter by depositing a sealed carrier envelope in the mail." Tex. Elec. Code § 86.010(b). A recent stroke victim and widower, Plaintiff Flores suffers serious ambulatory issues. Despite the use of a walker, Flores is, in effect, housebound. Exhibit 2, Flores Dep. 25:16-24. Plaintiff Flores consistently voted by mail as he only leaves the house for doctor visits, and only when someone else is available to offer him a ride and physical assistance. *Id.* at 9:16-23; 13:7-13. Even simple day-to-day tasks are difficult and he has "already fallen several times" simply trying to exit his house. *Id.* at 13:7-13.

6

Flores is exactly the type of Plaintiff contemplated by the election code. In fact, this is the exact reason he has consistently voted by mail. Defendants have not even acknowledged the existence of this provision in the statute.

Defendants' attempt to demonstrate that the Guerreros received illegal assistance is likewise misleading. Defendants offer a poorly crafted paragraph mish-mashing various statutes and types of assistance without offering the particular facts required to establish any illegal assistance. There are two types of legal assistance: assistance reading and/or marking the ballot, Tex. Elec. Code 64.031 (assistance voting in person), 86.010(a) (assistance "preparing" mail ballot), and assistance by a person who merely takes the sealed carrier envelope to the mail for the voter, id. 86.010(b). The fact that the Guerreros can speak Spanish, one of the ballot languages, does not of itself establish that on the day they voted they were ineligible for assistance preparing the ballots, because a voter could still be physically incabable of reading or marking the ballot on that day, due to eyesight or other medical issues. Both Maria and Vicente Guerrero testified that they received no assistance preparing their ballots. M. Guerrero dep. 18:15-16; V. Guerrero dep. 17. Even if they had received preparation assistance, Defendants did not attempt to demonstrate that they were ineligible for such assistance. With regard to taking the ballots to the mail: Vicente Guerrero did not even testify that anyone took his ballot to the mail, so that fact is not established, and Defendants did not attempt to establish it. Maria Guerrero did testify that "Ms. Barrios and Ms. Vela," whose names are in fact listed as witnesses on the carrier envelope as required, did take her ballot with them after the "envelope was already closed." M. Guerrero dep. 17:23-24, 18:12-14. Both of the Guerreros are over the age of eighty years old making leaving their home substantially more difficult than simply voting by mail. (V. Guerrero Dep. 4:14-15; M. Guerrero Dep. 20:3-6). Defendants have not even attempted to

7

establish that Maria Guerrero, or, for that matter, her husband, are statutorily ineligible for assistance taking the completed ballot to the mail.

### b. No Intention to Vote-by-Mail in the Future

Additionally, the Defendants argue that Plaintiffs lack standing because they stated in depositions that they do not intend to vote-by-mail in future elections, but this line of argumentation completely ignores that Plaintiffs are seeking a declaratory judgment and nominal damages for past harm in addition to their prospective relief. Further, the only reason that Plaintiffs are reluctant to vote by mail in the future is that they do not believe the Defendants' unconstitutional impediments will actually be removed.

Contrary to the Defendants' assertions, even if Plaintiffs lacked standing for a prospective injunction, they still have standing for their already accrued injuries. In their complaint Plaintiffs specifically request:

1. Declaratory judgment that the statutes, regulations, and procedures as challenged herein violate the right to vote, due process of law, and equal protection of the law, as alleged herein, facially and as-applied;
…
5. Any further orders necessary or expedient in effectuating the relief sought herein;
6. Nominal damages for the violation of Plaintiffs' constitutional rights;
7. Reasonable and necessary attorneys' fees, costs, and expenses pursuant to 42 U.S.C. § 1988; and
8. All other relief to which Plaintiffs may be entitled.

Plfs.' Sec. Am. Compl. at 15. Even if Defendants were correct in that the threat of continued constitutional violations against Plaintiffs was enough to effectively chill them from exercising their right to vote by mail in the future, this does not speak towards their facial and as-applied allegations requesting nominal damages, attorneys' fees and costs, and a declaratory judgment. Defendants conflate a narrow standing issue regarding standing for injunctions with Plaintiffs standing for the entire lawsuit.

Additionally, Defendants ignore the fact that the reason Plaintiffs stated disinterest in voting by mail in the future is entirely based on Defendants' unconstitutional conduct and the threat that their votes would not be counted if sent by mail again. All three Plaintiffs couched their statements concerning future voting in person in terms of a direct response to their rights being violated by the Defendants' unconstitutional acts and the difficulty this litigation has caused for them. In the case of Plaintiff Flores, the Defendants cite his statement that he would no longer vote by mail and would rather find someone to take him to vote in person in the future. EVBB MTD/MSJ at 6-7. However, this completely ignores the context and reasoning of *why* he is scared to vote by mail in the future. Directly after the lines quoted by the Defendants, Plaintiff Flores explains why he is going to vote in person. ("This way, I avoid more issues like this, more problems. That way they accept -- they accept me. Then I'll be taking my card to vote.") Later, Plaintiff Flores even discusses leaving the country if the Defendants continued to infringe on his constitutional rights. (Flores Dep. 19:8-13) ("I mean, they should let me vote. If not, I'll just go back to Mexico like La India Maria."). Likewise, Plaintiffs Maria and Vicente Guerrero stated directly that her disinterest in voting by mail in the future is based entirely on the rejection of their valid signatures. (M. Guerrero Dep. 19:19-22; V. Guerrero Dep. 19:13-16). In effect, the Defendants have so egregiously violated the Plaintiffs rights, that the Plaintiffs are simply too skeptical to believe that their constitutional right to vote would be respected.

Even aside from this, as argued in response to the Secretary's motion, the justiciability principles regarding standing in election cases involving a facial challenge to a state statute are considerably relaxed, in order to ensure the unconstitutional action does not continue to infringe other voters' rights. That argument is incorporated here as well.

**II.     Plaintiffs' Signatures were on each Mail-in Ballot Carrier Envelope and Mail-in Ballot Application.**

Defendants argue that they are entitled to summary judgement as the Plaintiffs have "stated that the signatures on the mail-in ballot carrier envelope and the mail-in ballot application do not match."  EVBB MTD/MSJ at 12.

Here, the Plaintiffs merely recognized and have attested to the fact that their signatures on the carrier envelope and ballot applications are not exact duplicates in every conceivable way. (Flores Dep. 14:15-15:6, May 13, 2019) ("Well, I mean, for example, here on the F -- the F, I mean, I try to – it could be that the F -- I slipped there, but, I mean, I try to sign the same way all the time, but I know that's my handwriting."). The only purpose of the signature-match requirement in Texas law is as a rough means of determining whether the person submitting the ballot is the same person who requested the ballot (judged by an eyeball comparison of the signatures).  The Secretary has confirmed that the State's interest is "to ensure that the person who submitted the mail-in ballot is the person entitled to cast that ballot[.]"  Doc. 65 at 2.  This is a voter ID requirement, not a handwriting test.  Dr. Muhammed has explained how and why the same person's signature varies from one time to another, and neither the Secretary nor the EVBB Defendants have even attempted to undermine that testimony.  The point is that variation is common and natural, particularly for the aged, and the statutory regime is unconstitutional unless it allows pre-deprivation process.  The relevant inquiry is whether the signatures were made by the Plaintiffs (a fact that all three Plaintiffs attested to under oath) and whether they were afforded a process to prove this before being disenfranchised in violation of their constitutional rights to due process.

**PRAYER**

Plaintiffs request the Court deny the Defendants' motion to dismiss/motion for summary judgment in all respects, and grant any further relief to which Plaintiffs may be entitled.

        Respectfully submitted,

/s/ Jerad Najvar
Jerad Wayne Najvar
Tex. Bar No. 24068079
S.D. Tex. No. 1155651
jerad@najvarlaw.com
2180 North Loop West, Suite 255
Houston, TX 77018
281.404.4696 phone
281.582.4138 fax
*Lead Counsel for Plaintiffs*

*Of counsel:*
NAJVAR LAW FIRM, PLLC
Austin M.B. Whatley
Tex. Bar No. 24104681
2180 North Loop West, Ste. 255
Houston, TX 77018
281.410.2003 phone
austin@najvarlaw.com

**Certificate of Service**

       The undersigned counsel hereby certifies that on August 19, 2019, the foregoing document, along with any exhibits and proposed order, was served on the following counsel of record in this matter by means of the court's CM/ECF system:

Mr. Eric Hudson
Mr. H. Carl Myers
PO Box 12548, Capitol Station
Austin, TX 78711
*Counsel for Defendant Pablos*

Mr. Martin Golando
405 N. Saint Mary's, Suite 700
San Antonio, TX 78205
*Counsel for ballot board Defendants*

                                                                                 /s/ Jerad Najvar
                                                                                  Jerad Najvar