IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | |
|---|---|
| FEDERICO FLORES, JR., et al., § § *Plaintiffs*, § § § Civil Case No. 7:18-cv-00113 v. § § RUTH R. HUGHS, IN HER OFFICIAL § CAPACITY AS TEXAS SECRETARY § OF STATE, et al., § § *Defendants*. | |

## PLAINTIFFS' ADVISORY AND PROPOSED ORDER(S)

The Court has already recognized that Texas's current signature-review process violates constitutional requirements, and is it clear that the Secretary of State will not and cannot attempt to remedy this violation without the mandate of a court order. Consequently, Plaintiffs request the Court—at a minimum—enter a declaratory judgment against the Secretary holding that the current process violates procedural due process, which will enable the Secretary to devise and implement a remedial plan. To be sure, Plaintiffs further request and suggest a form injunction by which the Court may enter the remedial plan itself. But at a minimum, a declaratory judgment should be entered without delay, as there is still plenty of time for the Secretary to devise and implement a remedial plan before Texas's upcoming elections.

### Introduction

At the dispositive motions hearing held October 16, 2019, this Court recognized the weight of federal caselaw holding that mail-ballot signature-matching regimes like Texas's— lacking an adequate notification and cure procedure that would allow the voter to ensure his or

1

her ballot is counted in the election—violate due process.[1] The Court also recognized the gravity of the underlying right at risk of deprivation by these inadequate procedures: the right to vote.[2] While the Secretary argued that the ability of the "county election officer" to seek an injunction at his or her discretion under current Election Code § 87.127(a) offered an adequate procedural protection for the voter, the Court rejected that argument. The Court recognized—as Plaintiffs had pointed out—that the ability of the "county election officer" (*not* the voter) to *potentially* (in his or her discretion) petition a court for the extraordinary remedy of an injunction was an "inadequate" protection, Hearing Trans. (Oct. 16, 2019) at 8:24, both because there is no guarantee of timely notice under Texas's statutory regime, *id.*, and even if there were, the suggested remedy is not available to the individual voter, *id.* at 4:10-25 ("The State statute doesn't provide any personal remedy to you other than maybe somebody might make the Complaint…. [T]here's nothing left to the individual voter."). Plaintiffs already explained numerous reasons why the Secretary's proposed procedure is insufficient, including those cited by the Court. *See Plfs' Reply* (Doc. 77) at 6-7.

Rather than issue an order at that hearing, the Court extended an opportunity to the Secretary of State to further digest the caselaw, strongly suggesting that the Secretary should explore the possibility of reaching a settlement with the Plaintiffs "to try to fix this for the future and everybody else, including [the Plaintiffs]."[3] The Court set a status conference for December 12, which was then canceled (on December 9) and re-set for March 25, 2020.

In anticipation of the December motions hearing, counsel for Plaintiffs and the Secretary conferred. The Secretary's counsel advised that the Secretary would not agree to recommend or

---

[1] E.g., Hearing Trans. (Doc. 80) at 4-5, 8.

[2] Hearing Trans. at 6:21-22.

[3] Hearing Trans. at 26:5-9.

to implement a cure procedure. Instead, and despite the Court's admonishment at the October hearing, the Secretary maintained her position that § 87.127(a) was sufficient. The Secretary's Advisory, filed Monday (3/23/2020), reflects that the Secretary's position has still not changed in the three-and-a-half months since counsel's December conference, and five months after the October hearing.

As the Court already indicated in October, the injunction provision in § 87.127(a) is wholly unsatisfactory. Even immediate notice to an affected voter is meaningless in the absence of a constitutionally adequate procedure allowing the voter to validate the ballot. This case is ripe for decision, and there is still plenty of time for the Secretary to issue appropriate guidance or otherwise implement a constitutionally adequate cure process in advance of Texas's upcoming runoff elections and going forward. But it is clear that the Secretary will require the Court's intervention because she will not, and cannot, remedy the violation without at least a court order declaring the current regime unconstitutional. Plaintiffs respectfully request that the Court enter judgment, against the Secretary at a minimum.

Plaintiffs here attach precise proposed orders tailored to Texas law, as the Secretary requests in her Advisory of this week. Therefore there is no need to further delay judgment and a remedy as Texas's next round of elections approach. The Defendants are free to respond to Plaitniffs' proposed order(s), but Plaintiffs request that Defendants be ordered to respond no later than two weeks from today.

I. **Plaintiffs' Proposed Orders for a Declaratory Judgment (at a Minimum) and Remedial Injunction**

The Court has been generous in affording the Defendants every opportunity to make their case; indeed, the parties have briefed the merits *twice* already. Despite two full rounds of briefing, Defendants have not identified a single case upholding a signature-match regime like

3

Texas's against a due process challenge. The Court all but warned the Secretary that it may enter a declaratory judgment declaring the current statutory scheme unconstitutional and unenforceable. Hearing Trans. (Doc. 80) at 24, 25.

Another five months have passed since the Court admonished the Secretary's office to work to correct the constitutional infirmity, but the Secretary will not do so without the mandate of a court order. Accordingly, Plaintiffs request that the Court enter summary judgment, at a minimum against the Secretary, declaring the rejection of any mail-in ballot for perceived signature mismatch unconstitutional, unless and until a sufficient cure procedure is implemented by the State. *See Saucedo v. Gardner*, 335 F. Supp. 3d 202 (D. N.H. 2018) (granting declaratory relief that signature match requirement was violative of voters' due process rights and enjoining its enforcement). The Court could choose to stop there and leave it up to the Secretary to confer with relevant state officials and promulgate guidance as to a cure procedure that comports with the Constitution.

While issuance of such a declaratory judgment would prevent further constitutional violations until the State implements a sufficient cure procedure, Plaintiffs further request that the Court go ahead and enter its own remedial order, just as many other federal courts have done.

Several recent challenges to Texas Election Code requirements provide precedent, and a ready roadmap, for precisely the type of relief Plaintiffs seek here against the Secretary.

- In *OCA-Greater Houston v. Texas*, the district court first declared Election Code 61.033 unenforceable, and then enjoined Defendants (the State of Texas and Rolando Pablos, as Secretary of State) "from enforcing Texas Election Code § 64.0321 or … § 61.033," and "further [enjoined] Defendants to implement a remedial plan consistent with" specified terms. 1:15-cv-00679-RP (W.D. Tex. May 15, 2018) (Order) (**Plfs' Exhibit 9**). The remedial terms included two simple components, requiring defendants to (1) "revise training and instructional materials for state and county election officials" and (2) "distribute notice to all county elections departments clarifying that they are not to enforce" the invalid statutes, and "explicitly explaining" how local officials were to handle individuals presenting to vote with an interpreter, in a manner that satisfied the

4

        legal rights of voters in light of the declaration that the Texas statutes were unenforceable. *Id*. at 8.

- Likewise, in *Veasey v. Abbott*, District Judge Nelva Gonzalez Ramos of the Southern District of Texas recognized that the various state defendants, including the Secretary, had the ability to directly exercise control over and compliance of local officials with its order. **Plfs' Exhibit 10** (*Order Regarding Agreed Interim Plan for Elections*, entered in No. 2:13-cv-00193 (Aug. 10, 2016). Among other things, the Secretary, Governor, and TXDOT Director were tasked with ensuring local election officials complied with the court's interim order in utilizing specific documents regarding voter impediments, making oral translations, accepting specific identification documents, and training local officials. *Id.* at 1-4. The court recognized the extensive control the Secretary had over local election officials, going so far as requiring him and the other defendants to even curtail activity of poll watchers. *Id.* at 3 (requiring the defendants to ensure that poll watchers did not "communicate in any manner with any voter concerning the procedures outlined in this Order, presentation of identification, or the validity of a voter's impediment to obtain identification.")

In both cases, just as here, local election officials were responsible for applying the requirements of state law as polling or other election responsibilities were conducted, yet the courts recognized the Secretary was an appropriate party as the "Chief Election Officer" of Texas, and required him to exercise his authority over local officials to implement the Court's order.[4] Therefore, the Secretary's protestations here, that she has no control over the application of the challenged statutes by local ballot boards, has rightly been rejected by this Court at the October 16 hearing, and there is no impediment to entry of exactly the kind of order entered in *OCA-Greater Houston* and *Veasey*.

---

[4] In his response to the *Veasey* court's order, the Secretary and other state defendants submitted a plan detailing exactly how the Secretary would exercise his duties as chief election officer and ensure compliance of local election officials. In their plan, the Secretary stated, "as the State's chief election officer," the Secretary "is committed to providing effective education to election officials on how to implement the interim remedy order." Plfs' Exhibit 11 at 7. "Indeed"-according to the Secretary himself—"the Secretary of State is required by statute to adopt standards of training in election law and procedure for election judges, to develop materials for a standardized curriculum for training election judges, and to distribute those materials as necessary." *Id* (citing Tex. Elec. Code § 32.111(a)-(c)). Just as the *Veasey* court, the Secretary recognized that he had a duty inform, train, issue guidance and forms to, and ensure compliance of local election officials with the court's order. *Id.* at 12-15.

5

Furthermore, Texas already has a process for the validation of provisional ballots, allowing voters to present necessary documents or information to local officials within six days after election day.  See, esp., Tex. Elec. Code §§ 63.011, .051, .054.  Just as other courts have held, this extant process for provisional ballot validation can easily be extended to afford signature-mismatch voters the opportunity to validate their ballots within the same time frame. *See e.g. Martin v. Kemp*, 341 F. Supp. 3d 1326 (N.D. Ga. 2018), appeal dismissed sub nom. Martin v. Sec'y of State of Georgia, 18-14503-GG, 2018 WL 7139247 (11th Cir. Dec. 11, 2018); *Saucedo v. Gardner*, 335 F. Supp. 3d 202 (D.N.H. 2018); *Zessar v. Helander*, 05-C-1917, 2006 WL 642646 (N.D. Ill. Mar. 13, 2006).

Plaintiffs have attached a proposed order that incorporates both a declaratory judgment, and a remedial injunction ordering the implementation of a simple cure procedure.

As to the cure procedure, the proposed order incorporates a simple mail-in declaration signed by the voter and combined with a copy of his or her identification, in any of the voter ID forms permitted under Section 63.0101 of the Election Code.  Plaintiffs' proposed order and cure affidavit have been tailored specifically to Texas law, and mimic the same procedure and deadlines already used to validate provisional ballots.  In substance, this is the same process imposed by the federal district court in *Florida Democratic Party v. Detzner*, 2016 WL 6090943, at *10 (N.D. Fla. Oct. 16, 2016) (see the mail-in affidavit attached as Appx. II to the opinion, which is on file in this case as Plfs' Exhibit 13).

The proposed cure declaration would allow the voter to validate his or her ballot by returning the declaration affirming that he or she did in fact submit the mail ballot, along with a copy of the voter's identification in a form that satisfies the Election Code's extant ID requirements under Section 63.0101.  The proposed order works as follows:

➢ Current law requires the "presiding judge of the [EVBB]" to deliver written notice of the reason for the rejection of a ballot "to the voter at the residence address on the ballot application," and additionally to the email address to which the voter's ballot was sent, if the ballot was sent to the voter by email (as for military and overseas voters). Tex. Elec. Code § 87.0431(a). For any mail ballots slated for rejection based on a perceived signature mismatch, the proposed order would require the presiding judge of the EVBB to deliver the Notice of Rejected Ballot by placing it in the mail to the voter's address no later than the day after the ballot was reviewed by the EVBB, along with the proposed cure declaration attached to this advisory as Exhibit B. Further, for any voters who provided a telephone number or email address on the voter registration document or application for ballot by mail,[5] the presiding judge or the Early Voting Clerk would be required to provide additional notice of rejected ballot by phone and email (as provided by the voter) to the voter no later than the day after the ballot was reviewed by the EVBB. Any such notice email shall either attach a copy of the cure declaration or include a link to the cure declaration, and shall also notify the voter that the cure declaration is available for pickup by the voter or his or her designee at the office of the Early Voting Clerk. Any such notice phone call or voicemail shall inform the voter that the cure declaration is being sent to his or her address, and that the cure declaration is also available for pickup by the voter or his or her designee at the office of the Early Voting Clerk.[6]

---

[5] The Secretary's voter registration and application forms both already request this information. *See* Plfs' Exhibit 3 (Maria Guerrero application for mail ballot) (optional information Box 9: "Please list phone number and/or email address: *Used in case our office has questions").

[6] In the alternative, the Secretary could be ordered to devise appropriate notice and cure procedures, just as the Secretary is required to devise the implementation details of other Election Code requirements, including, for example, provisions for "Notice to Provisional Voter[s]." *See* Tex. Elec. Code § 65.059.

- The voter would then be required to return the completed cure declaration to the Early Voting Clerk on or before the sixth day after election day. This is the same time period during which provisional voters are already allowed to provide backup documentation to local election officials to validate their provisional ballot. *See* Tex. Elec. Code § 65.0541.

- Current law already requires that "the early voting ballot board shall verify and count provisional ballots … not later than the ninth day after the date of an election" or, with respect to "an election held on the date of the general election for state and county officers," "not later than the 13th day after the date of the election." Tex. Elec. Code 65.051(a), (a-1). Accordingly, the proposed order would require the early voting ballot board to review any submitted cure declarations on or before the ninth or thirteenth day, as appropriate, and if the declaration is properly completed, to accept the voter's mail ballot.

There remains plenty of time to implement an order in time for the July 2020 runoff elections, especially given that Plaintiffs' proposed cure tracks exactly the schedule already laid out for review and acceptance of provisional ballots, thus requiring no modification to any election schedule whatsoever.

Lastly, Plaintiffs maintain that judgment should be entered against the EVBB Defendants (in their official capacities) as well as the Secretary. *See Plfs' Reply to Ballot Bd. Defs' Resp. to Plfs' Amd. Mtn. for Summ. Judg.* (Doc. 76) at 2-5. However, even if the Court disagrees with

---

Whether the Court simply enters a declaratory judgment and orders the Secretary to devise the implementation details, or enters its own detailed remedial order, the current process has already been recognized as unconstitutional and it must be cured before additional elections are held in Texas and mail ballot voters are disenfranchised.

Plaintiffs on this point and dismisses their claims against the EVBB members, it can and should enter its declaratory judgment, and injunction order, against the Secretary.

## II. The San Antonio Litigation Does Not Provide Cause For Deferring Proceedings Here.

The instant lawsuit was filed April 11, 2018, and removed to this federal district on April 16, 2018. Plaintiffs hired a forensic document examiner and handwriting expert, Dr. Linton Mohammed, who supplied his written report (Plfs' Exhibit 7) and testified by deposition in Austin in November 2018. After the present voter-Plaintiffs were added, the Court extended the discovery period to permit Defendants to take the Plaintiffs' depositions. Federico Flores sat for his deposition in May 2019. See Plfs' Exhibit 2. Mr. and Mrs. Guerrero sat for their depositions in July 2019, see Plfs' Exhibits 3 & 4, after a re-scheduling occasioned due to a medical issue. The parties all then renewed their dispositive motions on July 29, 2019, and filed responses and replies, for a total of ten substantive documents. In short, this case is fully briefed and is ripe for decision.

The later-filed lawsuit pending in San Antonio federal court provides no occasion for abstention in this matter, nor has any party attempted to make such a case. Plaintiffs in *Richardson v. Secretary of State*, 5:19-cv-00963 (W.D. Tex.), filed suit on August 7, 2019. This was sixteen months after our matter was filed. In fact, *Richardson* was initiated after the *second* round of dispositive motions were filed here (in July 2019). The parties are still conducting discovery, and dispositive motions are not due until June 22, 2020. There are no pending motions in *Richardson*. Even if there were pending motions for preliminary or other relief, abstention would be inappropriate under clearly established precedent.

Respectfully submitted,

  */s/ Jerad Najvar*
Jerad Wayne Najvar

9

        Tex. Bar No. 24068079
        S.D. Tex. No. 1155651
        jerad@najvarlaw.com
        2180 North Loop West, Suite 255
        Houston, TX 77018
        281.404.4696 phone
        281.582.4138 fax
        *Lead Counsel for Plaintiffs*

*Of counsel:*
NAJVAR LAW FIRM, PLLC
Austin M.B. Whatley
Tex. Bar No. 24104681
S.D. Tex. No. 3348472
2180 North Loop West, Ste. 255
Houston, TX 77018
281.410.2003 phone
austin@najvarlaw.com

### Certificate of Service

The undersigned counsel hereby certifies that on March 25, 2020, the foregoing document, along with any exhibits and proposed order, was served on the following counsel of record in this matter by means of the court's CM/ECF system:

Mr. Michael R. Abrams
PO Box 12548, Capitol Station
Austin, TX 78711
*Counsel for Defendant Ruth R. Hughs*

Mr. Martin Golando
405 N. Saint Mary's, Suite 700
San Antonio, TX 78205
*Counsel for ballot board Defendants*

        */s/ Jerad Najvar*
        Jerad Najvar