IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| FEDERICO FLORES, JR., et al., | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | Civil Case No. 7:18-cv-00113 |
| v. | § | |
| | § | |
| RUTH R. HUGHS, IN HER OFFICIAL | § | |
| CAPACITY AS TEXAS SECRETARY | § | |
| OF STATE, et al., | § | |
| | § | |
| *Defendants*. | | |

**PLAINTIFFS' SECOND AMENDED
JOINT MOTION FOR SUMMARY JUDGMENT**

Pursuant to Federal Rule of Civil Procedure 56, Plaintiffs FEDERICO FLORES, MARIA
GUERRERO, and VICENTE GUERRERO jointly move for summary judgment against the
Secretary of State and the Defendant members of the Starr County Early Voting Ballot Board, for
the reasons that follow and for any additional reasons that may appear of record or at any hearing
on this motion.

**Introduction**

Remaining Plaintiffs are three Starr County voters who all testified that they signed their
own mail-ballot applications and carrier envelopes (containing the voted ballot) with respect to the
March 2018 Democratic Primary election, yet whose votes were rejected for a perceived

1

discrepancy in these signatures.[1] Plaintiffs challenge Texas law as a violation of procedural due process under the Fourteenth Amendment.

The facts as to each remaining voter-Plaintiff are summarized in more detail in Plaintiffs' *Amended Motion for Summary Judgment* (Doc. 67).  In the interest of conserving judicial resources and in an effort to not burden the Court with information already in the record, Plaintiffs incorporate the evidence and arguments submitted with their *Amended Motion for Summary Judgment* (Doc. 67), and their replies in support thereof (Docs. 76 & 77).  (Plaintiffs' Index of Exhibits is found at Doc. 77-1.)  Plaintiffs also incorporate the depositions of Plaintiffs Maria and Vicente Guerrero, already on file with the Court as exhibits to Secretary Hughs' Amended Motion for Summary Judgment (Docs. 65-2 and 65-3).  To the extent necessary, and only in an abundance of caution, Plaintiffs request the Court take judicial notice of such incorporated documents already on file with the Court.

The material facts are that each voter attests to signing his or her own application and his or her own carrier envelope, and yet each of their ballots were rejected for perceived signature discrepancy by the EVBB.  *See Plfs' Am. Joint Mtn. for Summ. J.* at 2-3, and Plfs' Exhibits 2 (Depo. of Plaintiff Federico Flores, Jr.); 3 & 4 (Guerrero Plaintiffs' BBM applications and carrier envelopes); Plfs' Exhibit 5 (notices to Plaintiffs of rejected ballots); Doc. 65-2 (Depo. of Plaintiff Maria Guerrero); Doc. 65-3 (Depo. of Plaintiff Vicente Guerrero).

---

[1] The original petition in this action was filed by Plaintiffs Leticia Galvan and Martie Garcia Vela in Texas state court on April 11, 2018. Defendant Secretary of State Rolando B. Pablos removed the action to this Court on April 16, 2018. Doc. 1.  Plaintiff Amelia Martinez passed away shortly thereafter, and her daughter, Magaly Serna, filed a Motion to Substitute Party (Doc. 45), which the Court denied in an oral order on March 19, 2019.  On March 19, 2019, the Court also dismissed Plaintiffs Galvan and Garcia Vela (the original, candidate-Plaintiffs), and ordered Plaintiffs to file an amended complaint reflecting these orders.  Thus, Plaintiffs filed their Second Amended Complaint on May 9, 2019 (Doc. 58).

*Flores v. Secretary of State*: Plfs' Second Amended MSJ

Plaintiffs do not contend that mail balloting is constitutionally required, but once a state creates such a regime, it "must administer it in accordance with the Constitution*." La Follette v. Padilla*, No. CPF-17-515931 (Cal. Sup. Ct., San Francisco County Mar. 5, 2018) (*quoting Zessar v. Helander*, No. 05-C-1917, 2006 WL 642646 at *6 (N.D. Ill. 2006)).  When Plaintiffs filed this case in April 2018, federal and state courts had already invalidated deficient procedures like Texas's in Illinois, Florida, California, and Arizona.[2]  Since that time, federal courts in Georgia and New Hampshire have likewise invalidated those states' signature-mismatch statutes for lack of constitutionally sufficient process.[3] In fact, there does not appear to be a single reported case upholding a statutory regime like Texas's against a procedural due process challenge. Texas's current procedures violate the constitution, as argued at *Plaintiffs' Amended Mtn. for Summary Judgment* (Doc. 67) at 11-16 and Plaintiffs' replies in support thereof (Docs. 76 & 77), and Plaintiffs are entitled to judgment as a matter of law.

Plaintiffs argue that the Texas procedures permitting rejection of a mail ballot for signature mismatch without affording an opportunity to cure a perceived deficiency violates due process and the right to vote.  Plaintiffs first seek a declaration that Texas's procedure is illegal.  Prayer, Sec.

---

[2] *Democratic Executive Comm. of Florida v. Detzner*, 347 F. Supp. 3d 1017 (N.D. Fla. 2018) (extending existing voter cure timeframe for voters that were "belatedly notified"); *Florida Democratic Party v. Detzner,* 4:16CV607-MW/CAS, 2016 WL 6090943, at *9 (N.D. Fla. Oct. 16, 2016) (ordering secretary of state to issue directive to local election officials stating that "statutory scheme as it relates to mismatched-signature ballots is unconstitutional; and . . .  require[ing] [they] allow mismatched-signature ballots to be cured in precisely the same fashion as currently provided for non-signature ballots."); *La Follette*, *supra*; *Zessar v. Helander*, 05-C-1917, 2006 WL 642646 (N.D. Ill. Mar. 13, 2006) (granting summary judgment for Plaintiffs in a procedural due process challenge to a comparable statutory scheme).

[3] *Martin v. Kemp*, 341 F. Supp. 3d 1326 (N.D. Ga. 2018), *appeal dismissed sub nom. Martin v. Sec'y of State of Georgia,* 18-14503-GG, 2018 WL 7139247 (11th Cir. Dec. 11, 2018) (ordering preliminary injunction in procedural due process challenge ordering election officials to "provide pre-rejection notice and an opportunity to resolve the alleged signature discrepancy to the absentee voter" within three days.); *Saucedo v. Gardner*, 335 F. Supp. 3d 202 (D. N.H. 2018) (granting declaratory relief that signature match requirement was violative of voters' due process rights and enjoining its enforcement.);

3

Am. Compl. (item 1.).     In addition to this declaratory relief, Plaintiffs pray specifically for:

2. A permanent injunction against the State of Texas, by and through Secretary Pablos or as otherwise deemed appropriate by this Court, and against the Starr County Early Voting Ballot Board and each of its members, <u>from enforcement</u> of the statutory procedure permitting mail ballot rejection for perceived signature mismatch without affording appropriate procedural due process permitting voters a method of seeking to cure any deficiency that may be cured to ensure their ballot is counted;

3. A permanent injunction or other appropriate order <u>implementing constitutionally sufficient procedures</u> to permit Texas voters whose mail ballots are slated to be rejected for perceived signature mismatch the opportunity to affirm their identity or otherwise to cure perceived deficiencies regarding their mail-in ballots so that they can be counted in the relevant election;

4. A permanent injunction or other appropriate order <u>directing the Secretary of State to provide notice of any procedures ordered by this Court to the public</u>, including via the Secretary's official website, and to the appropriate election administrator or other relevant election official of each county in Texas;

5. Any further orders necessary or expedient in effectuating the relief sought herein;

6. Nominal damages for the violation of Plaintiffs' constitutional rights;

7. Reasonable and necessary attorneys' fees, costs, and expenses pursuant to 42 U.S.C. § 1988; and

8. All other relief to which Plaintiffs may be entitled.

*Prayer*, Sec. Am. Compl. (Doc. 58) (underlining added).

In other words, Plaintiffs first seek, at a minimum, a declaratory judgment that Texas's current process violates procedural due process.[4]  In terms of injunctive relief, Plaintiffs seek a prohibitory injunction against all Defendants, enjoining Defendants from rejecting mail-in ballots

---

[4] Texas's process is facially unconstitutional for the same reasons explained by the federal district courts in *Saucedo*, 335 F. Supp. 3d at 213-14, and *Martin*, 341 F. Supp. 3d at 1336-37.  This point is discussed further at Doc. 77 at 3-4.

4

*Flores v. Secretary of State*: Plfs' Second Amended MSJ

for perceived signature mismatch without affording appropriate cure procedures.  Plaintiffs further seek a mandatory injunctive order against all Defendants implementing appropriate remedial procedures, and requiring the Secretary to promulgate notice of such procedures.  Lastly, Plaintiffs seek nominal damages.[5]

On March 25, 2020, the Court held a second hearing regarding Plaintiffs' Amended Motion for Summary Judgment (Doc. 67), EVBB Defendants' Motion to Dismiss and Motion for Summary Judgment (Doc. 66), and Defendant Hughs' Amended Motion for Summary Judgment (Doc. 65). The Court denied the Secretary's motion.  The Court granted the EVBB Defendants' motion in one respect—dismissing the claims against the EVBB Defendants in their *personal* capacities based on qualified immunity—but denied the EVBB Defendants' motion in all other respects.  Order (Doc. 93, Mar. 30, 2020).  Plaintiffs' claims against the EVBB Defendants in their official capacities (in substance, claims against the early voting ballot board positions, not individuals) remain, as the EVBB Defendants expressly acknowledge.  Doc. 91 at 3 n.1 ("[A]ny Declaratory Relief or Injunctive Relief granted against the Texas Secretary of State regarding additional notice and cure opportunities for rejected ballots will of course be applicable to the local Defendants.").

Finally, the Court denied Plaintiffs' motion without prejudice and instructed Plaintiffs to re-file the motion for summary judgment detailing their proposed remedy plan.

## Argument

At the dispositive motions hearing held October 16, 2019, this Court recognized the weight of federal case law holding that mail-ballot signature-matching regimes like Texas's—lacking an

---

[5] Plaintiffs also seek and reasonable and necessary attorneys' fees, costs, and expenses under § 1988, but any such relief would be determined, if appropriate, after entry of the Court's order(s).

*Flores v. Secretary of State*: Plfs' Second Amended MSJ

adequate notification and cure procedure that would allow the voter to ensure his or her ballot is counted in the election—violate due process.[6]   The Court also recognized the gravity of the underlying right at risk of deprivation by these inadequate procedures:  the right to vote.[7]   While the Secretary argued that the ability of the "county election officer" to seek an injunction at his or her discretion under current Election Code § 87.127(a) offered an adequate procedural protection for the voter, the Court rejected that argument.  The Court recognized—as Plaintiffs had pointed out—that the ability of the "county election officer" (*not* the voter) to *potentially* (in his or her discretion) petition a court for the extraordinary remedy of an injunction was an "inadequate" protection, Hearing Trans. (Oct. 16, 2019) at 8:24, both because there is no guarantee of timely notice under Texas's statutory regime, *id.*, and even if there were, the suggested remedy is not available to the individual voter, *id.* at 4:10-25 ("The State statute doesn't provide any personal remedy to you other than maybe somebody might make the Complaint…. [T]here's nothing left to the individual voter.").  Plaintiffs already explained numerous reasons why the Secretary's proposed procedure is insufficient, including those cited by the Court.  *See Plfs' Reply* (Doc. 77) at 6-7.

Rather than issue an order at that hearing, the Court extended an opportunity to the Secretary of State to further digest the caselaw, strongly suggesting that the Secretary should explore the possibility of reaching a settlement with the Plaintiffs "to try to fix this for the future and everybody else, including [the Plaintiffs]."[8]   The Court set a status conference for December 12, which was then canceled (on December 9) and re-set for March 25, 2020.

---

[6] E.g., Hearing Trans. (Doc. 80) at 4-5, 8.

[7] Hearing Trans. at 6:21-22.

[8] Hearing Trans. at 26:5-9.

*Flores v. Secretary of State*: Plfs' Second Amended MSJ

In anticipation of the December motions hearing, counsel for Plaintiffs and the Secretary conferred.  The Secretary's counsel advised that the Secretary would not agree to recommend or to implement a cure procedure.  Instead, and despite the Court's admonishment at the October hearing, the Secretary maintained her position that § 87.127(a) was sufficient.  The Secretary's Advisory, filed March 23, 2020, reflects that the Secretary's position has still not changed in the three-and-a-half months since counsel's December conference, and five months after the October hearing.

As the Court already indicated in October, the injunction provision in § 87.127(a) is wholly unsatisfactory.  Even immediate notice to an affected voter is meaningless in the absence of a constitutionally adequate procedure allowing the voter to validate the ballot.  This case is ripe for decision, and there is still plenty of time for the Secretary to issue appropriate guidance or otherwise implement a constitutionally adequate cure process in advance of Texas's upcoming runoff elections and going forward.  But it is clear that the Secretary will require the Court's intervention because she will not, and cannot, remedy the violation without at least a court order declaring the current regime unconstitutional.  Plaintiffs respectfully request that the Court enter judgment, and appropriate remedial orders.

Plaintiffs here attach precise proposed orders tailored to Texas law, as the Secretary requests in her Advisory filed March 23, 2020.

## I.  Plaintiffs' Proposed Orders for a Declaratory Judgment (at a Minimum) and Remedial Injunction

The Court has been generous in affording the Defendants every opportunity to make their case; indeed, the parties have briefed the merits *twice* already.  Despite two full rounds of briefing, Defendants have not identified a single case upholding a signature-match regime like Texas's against a due process challenge.  The Court all but warned the Secretary that it may enter a

7

declaratory judgment declaring the current statutory scheme unconstitutional and unenforceable. Hearing Trans. (Doc. 80) at 24, 25.

Another five months have passed since the Court admonished the Secretary's office to work to correct the constitutional infirmity, but the Secretary will not do so without the mandate of a court order. Accordingly, Plaintiffs request that the Court enter summary judgment declaring the rejection of any mail-in ballot for perceived signature mismatch unconstitutional, unless and until a sufficient cure procedure is implemented by the State. *See Saucedo v. Gardner*, 335 F. Supp. 3d 202 (D. N.H. 2018) (granting declaratory relief that signature match requirement was violative of voters' due process rights and enjoining its enforcement). Plaintiffs are entitled to a declaration that the statutes are invalid as alleged, that the Plaintiffs' rights have been violated by the rejection of their ballots without a sufficient pre-deprivation cure procedure, and nominal damages. Plaintiffs are entitled to declaratory relief and nominal damages regardless of whether the Court enters injunctive relief in addition to declaratory relief. *Familias Unidas v. Briscoe*, 619 F.2d 391, 402 (5th Cir. 1980) (declaratory judgment and nominal damages for past constitutional violation, despite finding injunctive relief inappropriate) (discussed further at Doc. 76 at 4-5, 5 n.3). While Plaintiffs do not claim compensatory or other economic damages, they are entitled— as a matter of law—to an award of nominal damages from Defendants for the violation of their procedural due process rights. *Carey v. Piphus*, 435 U.S. 247, 266-67 (1978) ("Because the right to procedural due process is 'absolute' in the sense that it does not depend on the merits of a claimant's substantive assertions, … we believe that the denial of procedural due process should be actionable for nominal damages without proof of actual injury."); *Familias Unidas*, 619 F.2d at 402 (recognizing, in light of *Carey*, that "demonstration of a denial of the 'absolute' right to

*Flores v. Secretary of State*: Plfs' Second Amended MSJ

procedural due process required an award of nominal damages not to exceed one dollar," and extending that holding to First Amendment violations).

While issuance of a declaratory judgment would prevent further constitutional violations until the State implements a sufficient cure procedure, Plaintiffs further request that the Court go ahead and enter its own remedial order, just as many other federal courts have done.

Several recent challenges to Texas Election Code requirements provide precedent, and a ready roadmap, for precisely the type of relief Plaintiffs seek here against the Secretary.

- In *OCA-Greater Houston v. Texas*, the district court first declared Election Code 61.033 unenforceable, and then enjoined Defendants (the State of Texas and Rolando Pablos, as Secretary of State) "from enforcing Texas Election Code § 64.0321 or … § 61.033," and "further [enjoined] Defendants to implement a remedial plan consistent with" specified terms. 1:15-cv-00679-RP (W.D. Tex. May 15, 2018) (Order) (**Plfs' Exhibit 9**). The remedial terms included two simple components, requiring defendants to (1) "revise training and instructional materials for state and county election officials" and (2) "distribute notice to all county elections departments clarifying that they are not to enforce" the invalid statutes, and "explicitly explaining" how local officials were to handle individuals presenting to vote with an interpreter, in a manner that satisfied the legal rights of voters in light of the declaration that the Texas statutes were unenforceable. *Id*. at 8.

- Likewise, in *Veasey v. Abbott*, District Judge Nelva Gonzalez Ramos of the Southern District of Texas recognized that the various state defendants, including the Secretary, had the ability to directly exercise control over and compliance of local officials with its order. **Plfs' Exhibit 10** (*Order Regarding Agreed Interim Plan for Elections*, entered in No. 2:13-cv-00193 (Aug. 10, 2016). Among other things, the Secretary, Governor, and TXDOT Director were tasked with ensuring local election officials complied with the court's interim order in utilizing specific documents regarding voter impediments, making oral translations, accepting specific identification documents, and training local officials. *Id*. at 1-4. The court recognized the extensive control the Secretary had over local election officials, going so far as requiring him and the other defendants to even curtail activity of poll watchers. *Id*. at 3 (requiring the defendants to ensure that poll watchers did not "communicate in any manner with any voter concerning the procedures outlined in this Order, presentation of identification, or the validity of a voter's impediment to obtain identification.")

In both cases, just as here, local election officials were responsible for applying the requirements of state law as polling or other election responsibilities were conducted, yet the courts recognized the Secretary was an appropriate party as the "Chief Election Officer" of Texas, and

*Flores v. Secretary of State*: Plfs' Second Amended MSJ

required him to exercise his authority over local officials to implement the Court's order.[9] Therefore, the Secretary's earlier protestations, that she has no control over the application of the challenged statutes by local ballot boards, has rightly been rejected by this Court at the October 16 hearing, and there is no impediment to entry of exactly the kind of order entered in *OCA-Greater Houston* and *Veasey*. (The Secretary now appears to acknowledge her clear statutory authority to "advise the counties on compliance with the Texas Election Code" "and of the election laws outside this code." Defendant Hughs' Advisory (Doc. 89) at 2.)

Furthermore, Texas already has a process for the validation of provisional ballots, allowing voters to present necessary documents or information to local officials within six days after election day. *See, esp.*, Tex. Elec. Code §§ 63.011, .051, .054. Just as other courts have held, this extant process for provisional ballot validation can easily be extended to afford signature-mismatch voters the opportunity to validate their ballots within the same time frame. *See, e.g.*, *Martin*, 341 F. Supp. 3d at 1339-40; *Saucedo*, 335 F. Supp. 3d at 221 ("That procedures already exist which could be readily extended to provide basic guarantees of due process to voters militates against defendants' argument."); *Zessar*, 05-C-1917, 2006 WL 642646, at *8 n.7.

Plaintiffs have attached a proposed order that incorporates both a declaratory judgment, and a remedial injunction ordering the implementation of a simple cure procedure.

---

[9] In his response to the *Veasey* court's order, the Secretary and other state defendants submitted a plan detailing exactly how the Secretary would exercise his duties as chief election officer and ensure compliance of local election officials. In their plan, the Secretary stated, "as the State's chief election officer," the Secretary "is committed to providing effective education to election officials on how to implement the interim remedy order." Plfs' Exhibit 11 at 7. "Indeed"-according to the Secretary himself— "the Secretary of State is required by statute to adopt standards of training in election law and procedure for election judges, to develop materials for a standardized curriculum for training election judges, and to distribute those materials as necessary." *Id* (citing Tex. Elec. Code § 32.111(a)-(c)). Just as the *Veasey* court, the Secretary recognized that he had a duty inform, train, issue guidance and forms to, and ensure compliance of local election officials with the court's order. *Id.* at 12-15.

*Flores v. Secretary of State*: Plfs' Second Amended MSJ

As to the cure procedure, the proposed order incorporates a simple mail-in declaration signed by the voter and combined with a copy of his or her identification, in any of the voter ID forms permitted under Section 63.0101 of the Election Code.  Plaintiffs' proposed order and cure affidavit have been tailored specifically to Texas law, and incorporate the same procedure and deadlines already used to validate provisional ballots.  In substance, this is the same process imposed by the federal district court in *Florida Democratic Party v. Detzner*, 2016 WL 6090943, at *10 (N.D. Fla. 2016) (see the mail-in affidavit attached as Appx. II to the opinion, which is on file in this case as Plfs' Exhibit 13).

The proposed cure declaration would allow the voter to validate his or her ballot by returning the declaration affirming that he or she did in fact submit the mail ballot, along with a copy of the voter's identification in a form that satisfies the Election Code's extant ID requirements under Section 63.0101.  The proposed order works as follows:

➢ Current law requires the "presiding judge of the [EVBB]" to deliver written notice of the reason for the rejection of a mail ballot "to the voter at the residence address on the ballot application," and additionally to the email address to which the voter's ballot was sent, if the ballot was sent to the voter by email (as for military and overseas voters).  Tex. Elec. Code § 87.0431(a).  For any mail ballots slated for rejection based on a perceived signature mismatch, the proposed order would require the presiding judge of the EVBB to deliver the Notice of Rejected Ballot by placing it in the mail to the voter's address no later than the day after the ballot was reviewed by the EVBB, along with the proposed cure

declaration (which is attached to this motion as Exhibit A) and a reasonable impediment declaration.[10]

    o    Further, for any voters who provided a telephone number or email address on the voter registration document or application for ballot by mail,[11] the presiding judge or the Early Voting Clerk would be required to provide additional notice of rejected ballot by phone and email (as provided by the voter) to the voter no later than the day after the ballot was reviewed by the EVBB.  Any such notice email shall either attach a copy of the cure declaration or include a link to the cure declaration, and shall also notify the voter that the cure declaration is available for pickup by the voter or his or her designee at the office of the Early Voting Clerk.  Any such notice phone call or voicemail shall inform the voter that the cure declaration is being sent to his or her address, and that the cure declaration is also available for pickup by the voter or his or her designee at the office of the Early Voting Clerk.[12]

➢    The voter would then be required to return the completed cure declaration, along with the requisite identification documents, to the Early Voting Clerk on or before the sixth day after election day.  This is the same time period during which provisional voters are already

---

[10] The explanation of the acceptable forms of identification comes directly from a form the Secretary of State has already promulgated, Form AW 13-8 ("ID required for Texas voters"), https://www.sos.state.tx.us/elections/forms/id/poster-11x17-aw-voter.pdf.

[11] The Secretary's voter registration and application forms both already request this information.  *See* Plfs' Exhibit 3 (Maria Guerrero application for mail ballot) (optional information Box 9: "Please list phone number and/or email address: *Used in case our office has questions").

[12] In the alternative, the Secretary could be ordered to devise appropriate notice and cure procedures, just as the Secretary is required to devise the implementation details of other Election Code requirements, including, for example, provisions for "Notice to Provisional Voter[s]."  *See* Tex. Elec. Code § 65.059. Whether the Court simply enters a declaratory judgment and orders the Secretary to devise the implementation details, or enters its own detailed remedial order, the current process has already been recognized as unconstitutional and it must be cured before additional elections are held in Texas and mail ballot voters are disenfranchised.

*Flores v. Secretary of State*: Plfs' Second Amended MSJ

allowed to provide backup documentation to local election officials to validate their provisional ballot. *See* Tex. Elec. Code § 65.0541.

➢ Current law already requires that "the early voting ballot board shall verify and count provisional ballots … not later than the ninth day after the date of an election" or, with respect to "an election held on the date of the general election for state and county officers," "not later than the 13th day after the date of the election." Tex. Elec. Code §§ 65.051(a), (a-1). Accordingly, the proposed order would require the early voting ballot board to review any submitted cure declarations on or before the ninth or thirteenth day, as appropriate, and if the declaration is properly completed, to accept the voter's mail ballot.

There remains plenty of time to implement an order in time for the July 2020 runoff elections, especially given that Plaintiffs' proposed cure tracks exactly the schedule already laid out for review and acceptance of provisional ballots, thus requiring no modification to any election schedule whatsoever.

## II.   The San Antonio Litigation Does Not Provide Cause For Deferring Proceedings Here.

The instant lawsuit was filed April 11, 2018, and removed to this federal district on April 16, 2018. Plaintiffs hired a forensic document examiner and handwriting expert, Dr. Linton Mohammed, who supplied his written report (Plfs' Exhibit 7) and testified by deposition in Austin in November 2018. After the present voter-Plaintiffs were added, the Court extended the discovery period to permit Defendants to take the Plaintiffs' depositions. Federico Flores sat for his deposition in May 2019. See Plfs' Exhibit 2. Mr. and Mrs. Guerrero sat for their depositions in July 2019, see Plfs' Exhibits 3 & 4, after a re-scheduling occasioned due to a medical issue. The parties all then renewed their dispositive motions on July 29, 2019, and filed responses and replies, for a total of ten substantive documents. In short, this case is fully briefed and is ripe for decision.

13

The later-filed lawsuit pending in San Antonio federal court provides no occasion for abstention in this matter, nor has any party attempted to make such a case.  Plaintiffs in *Richardson v. Secretary of State*, 5:19-cv-00963 (W.D. Tex.), filed suit on August 7, 2019. This was sixteen months after our matter was filed. In fact, *Richardson* was initiated after the second round of dispositive motions were filed here (in July 2019). The *Richardson* parties are still conducting discovery, and dispositive motions are not due until June 22, 2020.  There are no pending motions in *Richardson*.   Even if there were pending motions for preliminary or other relief, abstention would be inappropriate under clearly established precedent.   The Fifth Circuit has made abundantly clear that it adheres to the first to file rule.  *Sutter Corp. v. P & P Indus., Inc*., 125 F.3d 914, 920 (5th Cir. 1997).  Absent "compelling circumstances" (which have not been asserted by any party), it is improper for a court to deviate from this rule.  *Multi-Shot, LLC v. B & T Rentals, Inc*., CIV. A. H-09-3283, 2010 WL 376373, at *4 (S.D. Tex. Jan. 26, 2010); *Twin City Ins. Co. v. Key Energy Services, Inc*., CIV A H-09-0352, 2009 WL 1544255, at *5 (S.D. Tex. June 2, 2009); *Igloo Products Corp. v. The Mounties, Inc.*, 735 F. Supp. 214, 217 (S.D. Tex. 1990).  A federal court has "no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given." *Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69, 77 (2013) (quoting *Cohens v. Virginia*, 6 Wheat. 264, 404, 5 L. Ed. 257 (1821)).  The Supreme Court has cautioned that, where jurisdiction exists, "a federal court's 'obligation' to hear and decide a case is 'virtually unflagging.'"  *Id.* (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)).  This Court has already acknowledged the constitutional infirmities inherent in Texas's current process, and Plaintiffs respectfully request that the Court enter judgment promptly after the briefing on this motion is completed.

## PRAYER

For the above reasons, Plaintiffs respectfully request that the Court grant this motion for summary judgment and enter a declaratory judgment declaring the challenged statutes and procedures unconstitutional.  Plaintiffs further request that, after consideration of the parties' remedy briefs, the Court enter a permanent injunction.  Plaintiffs further request any additional relief to which they are justly entitled.

Respectfully submitted,

___/s/ Jerad Wayne Najvar_____
Jerad Wayne Najvar
Tex. Bar No. 24068079
S.D. Tex. No. 1155651
jerad@najvarlaw.com
2180 North Loop West, Suite 255
Houston, TX 77018
281.404.4696 phone
281.582.4138 fax
*Attorney in Charge for Plaintiffs*

*Of counsel:*
NAJVAR LAW FIRM, PLLC
Austin M.B. Whatley
Tex. Bar No. 24104681
S.D. Tex. No. 3348472
2180 North Loop West, Ste. 255
Houston, TX 77018
281.410.2003 phone
austin@najvarlaw.com

### Certificate of Service

The undersigned counsel hereby certifies that on April 1, 2020, the foregoing document, along with any exhibits and proposed order, was served on the following counsel of record in this matter by means of the court's CM/ECF system:

Mr. Michael R. Abrams
PO Box 12548, Capitol Station
Austin, TX 78711
*Counsel for Defendant Ruth R. Hughs*

*Flores v. Secretary of State*: Plfs' Second Amended MSJ

Mr. Martin Golando
405 N. Saint Mary's, Suite 700
San Antonio, TX 78205
*Counsel for ballot board Defendants*

$\qquad$ */s/ Jerad Najvar* $\qquad$
Jerad Najvar